(No. 47943.—

WILLIAM TWEEDY, JR., Appellee, v. WRIGHT FORD SALES, INC., *et al.*—(Ford Motor Company, Appellant.)

*Opinion filed Oct. 1, 1976.—Rehearing denied Dec. 2, 1976.*

Hutton, Laury & Hesser, of Danville, for appellant.

Sebat, Swanson, Banks, Lessen & Garman, of Danville (Ralph J. Swanson, of counsel), for appellee.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

The circuit court of Vermilion County entered judgment upon a jury verdict in the amount of $40,000 in favor of plaintiff, William Tweedy, Jr., and against defendant Ford Motor Company in plaintiff's action to recover damages for personal injuries. The circuit court also entered judgment upon the jury's verdict in favor of a co-defendant, Wright Ford Sales, Inc. (hereafter Wright), and against plaintiff. Defendant appealed, the appellate court affirmed (31 Ill. App. 3d 72), and we allowed defendant's petition for leave to appeal.

The facts are well stated and the pleadings adequately described in the appellate court opinion. Plaintiff was injured while driving a 1966-model Ford LTD manufactured by defendant and delivered to Wright in September 1965. Upon receipt of the automobile Wright had made its customary inspection, which included a visual check of the brake fluid in the master cylinder and a short test drive.

In December 1965 Wright sold the automobile to Russell Beasley. When Beasley had owned the automobile for approximately two months, a rod came loose and he returned it to Wright and bought a different car. Nothing was done to the brakes at any time that Beasley owned the automobile.

The automobile was repaired and, in January 1966, was sold to Robert Davis as a new car. Davis was the principal operator of the car and drove it every day. His wife, Ann, plaintiff's daughter, frequently drove the car. In March 1966 the automobile was taken to Wright for a 6,000-mile inspection. The oil was changed and the car was lubricated. Nothing was done to the brakes.

The only difficulty with the brakes prior to plaintiff's injury occurred on May 16, 1966. At that time the automobile had been driven approximately 7,500 miles. While Ann Davis was driving from Georgetown to her parents' home near Hoopeston, she experienced a temporary failure of the brakes when she attempted to stop at a stop sign. Several hours later plaintiff drove the car to pick up some canned goods for his daughter. Mrs. Davis had made no mention of earlier brake failure. On the return trip to his home plaintiff came to a "T" intersection of two gravel roads. He had lived in the area for more than 20 years and had traveled the intersection many times. As he approached the intersection he was traveling approximately 35 miles per hour. The weather was clear and the roads were dry. As he attempted to slow down, the brake pedal went completely to the floor without any noticeable resistance. Neither the mechanical emergency brake nor further operation of the brake pedal slowed the vehicle. It traveled across the intersection and struck a tree, and plaintiff was injured.

Plaintiff offered no expert testimony concerning the presence of a specific defect in the automobile's brake system. Robert Davis saw the car at a Ford garage in Hoopeston the day following the occurrence and found that "[t]he emergency brake was jammed all the way into the carpet, and the steering wheel was broke, the dash crushed in, and the floor was shoved up to the bottom of the power brake." The car was moved to a parts yard in Danville, and later to Westville, where, in October 1966, David Smith, a representative of the Insurance Company

of North America, and Alfred Smith, who owned the Danville parts yard, examined it. By that time, the front fenders, grill, radiator, motor and transmission had been removed, but the brake system remained. They testified that the power assist was damaged but that "you could get the mechanical brake resistance there." David Smith said that, when Alfred pumped the brake, "you could hear the noise when the shoes would open inside the drum." David Smith also found no evidence of leakage at the wheels and heard the cable move when the parking brake was operated. He had the master cylinder and power assist removed and sent to Ford.

William Strejan, a quality control engineer at Ford's headquarters in Michigan, testified that the power assist on the automobile was too badly damaged, but that he was able to conduct tests on the master cylinder. He stated that "[a] removal of the cap disclosed a residual amount of brake fluid in the master cylinder." He tested it at high and low pressure levels and observed no malfunction whatsoever.

Defendant contends that plaintiff failed to prove that the automobile was defective at the time of plaintiff's injury and that the defect existed when the automobile left defendant's possession. It argues that plaintiff proved only a malfunction of the brakes and that the verdict is predicated on "mere conjecture and surmise." Finally, it contends, the verdicts holding it liable and absolving Wright are inconsistent and cannot stand.

Concerning the failure to prove that the brakes were defective, defendant's argument, simply stated, is that the evidence did not show that there was any defect and that evidence of the malfunction when plaintiff was injured did not prove a defect. We do not agree. As the court said in *Dunham v. Vaughan & Bushnell Mfg. Co.*, 42 Ill. 2d 339, 342-43: "Although the definitions of the term 'defect' in the context of products liability law use varying language, all of them rest upon the common premise that those

products are defective which are dangerous because they fail to perform in the manner reasonably to be expected in light of their nature and intended function. So, Chief Justice Traynor has suggested that a product is defective if it fails to match the average quality of like products. (Traynor, The Ways and Meanings of Defective Products and Strict Liability, 32 Tenn. L. Rev. 363 (1965).) The Restatement emphasizes the viewpoint of the consumer and concludes that a defect is a condition not contemplated by the ultimate consumer which would be unreasonably dangerous to him. (Restatement, Torts (Second) sec. 402A, comment g.) Dean Prosser has said that 'the product is to be regarded as defective if it is not safe for such a use that can be expected to be made of it, and no warning is given.' (Prosser, The Fall of the Citadel, 50 Minn. L. Rev. 791, 826.) Dean Wade has suggested that apart from the existence of a defect 'the test for imposing strict liability is whether the product is unreasonably dangerous, to use the words of the Restatement. Somewhat preferable is the expression "not reasonably safe." ' (Wade, Strict Tort Liability of Manufacturers, 19 S.W. Law Journal 5, 15.)"

A *prima facie* case that a product was defective and that the defect existed when it left the manufacturer's control is made by proof that in the absence of abnormal use or reasonable secondary causes the product failed "to perform in the manner reasonably to be expected in light of [its] nature and intended function." See Annot., 51 A.L.R.3d 8 (1973); Rhinegold, *Proof of Defect in Product Liability Cases,* 38 Tenn. L. Rev. 325, 337 (1971).) Here the evidence shows that the brakes of an automobile driven approximately 7,500 miles, inspected by Wright prior to delivery, inspected again at 6,000 miles, and subjected to no abnormal use prior to the occurrence failed to function in the manner reasonably to be expected. Plaintiff was driving carefully at a reasonable rate of speed, the weather was good, the roads were dry,

he knew the intersection well, and there was no evidence of any reasonable secondary cause. As the court said in *Lindroth v. Walgreen Co.,* 407 Ill. 121, 134, "reasonable inferences may be drawn from established facts and all that can be reasonably required to establish controverted facts, whether the evidence be direct or circumstantial, is that the evidence creates a greater or less probability leading, on the whole, to a satisfactory conclusion," and on review "[t]he inquiry *** is whether the result reached below was one which is reasonable on the facts in evidence, not whether other conclusions might also have been reached."

We consider next defendant's contention that the verdicts were inconsistent and cannot stand. The authorities cited by defendant (*Lucey v. Harstedt* (App. Div. 1945), 53 N.Y.S.2d 557; *Johnson v. Kirkpatrick,* 11 Ill. App. 2d 214; *Kimmel v. Hefner,* 36 Ill. App. 2d 137) are so clearly distinguishable that no discussion of them is required. Furthermore, the record shows that defendant tendered, and the court with slight modification gave, an instruction which told the jury that "If you decide for either or both of the defendants on the question of liability, you will have no occasion to consider the question of damages as to the defendant or defendants for whom you have decided on the question of liability." It shows, too, that the forms of verdict, submitted to the jury without objection from defendant, provided for precisely the type of verdicts returned. Under these circumstances the errors now alleged were waived and need not be further considered.

Although the parties have briefed the question whether plaintiff made a *prima facie* case that the brakes were defective by reason of a defective design, we need not and do not reach the issue. For the reasons stated the judgment is affirmed.

*Judgment affirmed.*