LIVINGSTON SERVICE COMPANY, INC., Plaintiff-Appellant, *v.*
BIG WHEELS, INC., Defendant and Counterplaintiff-Appellee and Cross-Appellee.—(JOHN E. MITCHELL COMPANY, Defendant and Counterdefendant-Appellee and Cross-Appellant.)

Fourth District    No. 16605

Opinion filed June 3, 1981.

Dunn, Brady, Goebel, Ulbrich, Morel, Kombrink & Hundman, of Bloomington (William M. Goebel, of counsel), for appellant.

Westervelt, Johnson, Nicoll & Keller, of Peoria (Robert D. Jackson, of counsel), for appellee John E. Mitchell Company.

Heyl, Royster, Voelker & Allen, of Peoria (Rex Linder, of counsel), for appellee Big Wheels, Inc.

Mr. JUSTICE GREEN delivered the opinion of the court:

A custom-built fertilizer spreader vehicle caught fire and burned on April 11, 1977, while being used by its owner, plaintiff, Livingston Service Company, Inc., to spread fertilizer upon a farm field. The predominant issue in this appeal from trial court judgments against plaintiff in its suit to recover for the loss of the vehicle is whether, from the circumstances shown in the trial court, the jury could infer from the vehicle having caught fire and burned that the fire resulted from a defect in the vehicle which existed at the time the vehicle was delivered by the seller to plaintiff on February 3, 1976.

On July 24, 1978, plaintiff filed suit in the circuit court of Livingston County against defendant, Big Wheels, Inc., who had built the vehicle and sold it to plaintiff. Later, defendant, John E. Mitchell Company (Mitchell), manufacturer of the air-conditioning equipment installed by Big Wheels, Inc., was added as a defendant. Still later, Big Wheels, Inc., counterclaimed against Mitchell seeking indemnity. The case was tried before a jury on a breach of warranty count against Big Wheels, Inc., strict liability for defective product counts against both defendants and the counterclaim. At the close of the evidence, the trial court directed a verdict against plaintiff on the breach of warranty count and in favor of Big Wheels, Inc., on the counterclaim. The jury found for the defendants on the defective product counts. Judgments were entered accordingly.

Plaintiff has appealed and Mitchell has cross-appealed the judgment on the counterclaim. The warranty count was based upon a claimed breach of the implied warranty of merchantability. The trial court's stated reason for the directed verdict on that count was that it deemed the warranty to have been disclaimed and excluded as a matter of law and

replaced by an express one-year warranty which had expired by the time of the fire. Plaintiff maintains that the warranty of merchantability had not been disclaimed or excluded as a matter of law. Big Wheels, Inc., asserts the trial court's rationale to be correct and argues that in any event the directed verdict was correct because plaintiff had failed to make a *prima facie* case. Plaintiff also claims the trial court erred in the issues instruction given as to the defective product counts. Defendants claim that the given instruction was correct, and plaintiff failed to make a *prima facie* showing as to those counts as well. Mitchell also maintains the directed verdict of indemnity was erroneous because of a limited warranty agreement between it and Big Wheels, Inc.

Both the breach of warranty count and the strict liability for defective product counts required the plaintiff to establish that the fire had, as a proximate cause, a defect in the vehicle existing at the time the vehicle left the possession of the party to be charged. As to each, proof of defectiveness was governed by the same rules. (*Dunham v. Vaughan & Bushnell Manufacturing Co.* (1969), 42 Ill. 2d 339, 247 N.E.2d 401.) Because we agree with defendants that the proof was insufficient to raise a question of fact, we deem the point controlling and discuss it first.

The only occurrence witness to the start of the fire was Lee Cleary, plaintiff's employee who was operating the vehicle at the time of the fire. He testified that he suddenly saw a puff of smoke on his left, looked out and saw flames coming up the back of the cab, dismounted, and attempted in vain to put out the fire with a fire extinguisher. He described the flames as coming from underneath the cab towards the middle and on the back. He did not recall any noise until the air lines blew and saw nothing which indicated to him the cause of the fire. The evidence was undisputed that all flammable portions of the vehicle were destroyed by the fire.

Plaintiff's proof of causation depended largely upon the testimony of Donald Miller, an investigative engineer who had examined the vehicle at plaintiff's request. Unable to otherwise focus upon a likely cause of the fire, he deemed consideration of the areas of the wreckage containing the greatest amount of metal warpage, heat discoloration, and consumption of materials by the fire to be significant. He testified that he found the left rear corner of the cab to have shown those qualities to the greatest degree and the right front corner of the engine compartment to be next. Miller stated that he found no evidence of breakdown in the engine compartment, the wiring inside the cab area or in the vehicle's instruments but that he found severe damage to the air-conditioner mounted on the roof of the cab.

Miller testified to an opinion that the fire was caused by "faults" in a cable bringing power from the battery to the air conditioner on the top of

the cab. He described a "fault" as a short circuit. He described evidence of short circuits having occurred at (1) the place of the entry of the cable into the air-conditioning unit, (2) a spot where he thought the cable had passed and which was some 15 inches from the cable's entry into the air-conditioner, and (3) a place at the lower left rear of the cab where he also thought the cable had passed. He found the cable to have vaporized at the first and third spots. Miller theorized that the first short circuit would have occurred at the point furthest from the battery and that this would have brought about, almost simultaneously, other short circuits progressively closer to the battery. He did not give an opinion as to any particular defect having caused the short circuits and, thus, necessarily gave no opinion as to whether any causative defect existed when plaintiff received the spreader.

In support of its theory that under the circumstances shown the jury could have inferred that the fire resulted from a defect existing in the vehicle when delivered, plaintiff relies strongly upon *Tweedy v. Wright Ford Sales, Inc.* (1976), 64 Ill. 2d 570, 357 N.E.2d 449, where evidence of the failure of an automobile's brakes to function was held to raise an inference that the brakes were defective six months earlier when the car was sold by a dealer as a new car although it was slightly used. That court stated:

> "A *prima facie* case that a product was defective and that the defect existed when it left the manufacturer's control is made by proof that in the absence of abnormal use or reasonable secondary causes the product failed 'to perform in the manner reasonably to be expected in light of [its] nature and intended function.' See Annot., 51 A.L.R.3d 8 (1973); Rhinegold, *Proof of Defect in Product Liability Cases*, 38 Tenn. L. Rev. 325, 337 (1971). Here the evidence shows that the brakes of an automobile driven approximately 7,500 miles, inspected by Wright prior to delivery, inspected again at 6,000 miles, and subjected to no abnormal use prior to the occurrence failed to function in the manner reasonably to be expected. Plaintiff was driving carefully at a reasonable rate of speed, the weather was good, the roads were dry, he knew the intersection well, and there was no evidence of any reasonable secondary cause." 64 Ill. 2d 570, 574-75, 357 N.E.2d 449, 451.

The evidence here may well have been sufficient for the trier of fact to have inferred that the fire resulted from a defect in the cable which existed at the time of the fire, but we determine the evidence insufficient to permit an inference that such defect existed when the unit was delivered to plaintiff. The evidence indicated that no abnormal use of the spreader had taken place and that it was being put to its normal use at the time of the fire, but we cannot agree that there was no circumstantial

evidence of a reasonable explanation for the defect other than that it had existed 16 months earlier. In *Tweedy*, the brake parts were encased by the mechanism of the wheel. Here, the cable was exposed. The spreader vehicle traveled on much rougher surfaces than the *Tweedy* car and had been in use about twice as long.

When *Tweedy* was in the appellate court (*Tweedy v. Wright Ford Sales, Inc.* (1975), 31 Ill. App. 3d 72, 334 N.E.2d 417), our opinion noted that the situation there differed from *Shramek v. General Motors Corp.* (1966), 69 Ill. App. 2d 72, 216 N.E.2d 244, and *Van Winkle v. Firestone Tire & Rubber Co.* (1969), 117 Ill. App. 2d 324, 253 N.E.2d 588. Those courts found no inference that a tire was defective to have arisen from the tire having a blowout because a blowout often occurs from causes other than a defect in a tire. In *Erzrumly v. Dominick's Finer Foods, Inc.* (1977), 50 Ill. App. 3d 359, 365 N.E.2d 684, evidence that a Coca Cola bottle exploded in the hands of a six-year-old child was held insufficient to create an inference that the bottle had been defective 15 or 20 minutes earlier when purchased at a grocery store. Evidence indicated that the bottle had been carried in the trunk of an automobile from the store to the purchaser's residence and was being carried up stairs by the minor when the explosion occurred. The court emphasized that the bottle could have been damaged while being carried from the grocery store, while in the automobile trunk, or while being carried up the stairs. The court deemed the evidence presented by the plaintiff insufficient in detail to negate those possibilities. Here, the chances for the cable to have been damaged in the 16-month period were much greater than for the bottle to have been damaged sufficiently in the 15- to 20-minute period to have caused it to explode.

We deem the lack of proof sufficient to justify the judgments of the trial court on both the warranty and defective product counts. We need not discuss the questions of whether the implied warranty of merchantability was disclaimed or whether error occurred in instructing the jury as to defective product counts. However, we choose to note that we find no error to have occurred in instructing the jury as to the latter counts.

Dissatisfied with issues instructions tendered by the parties, the court gave its own issues instruction concerning the defective product counts. Its second paragraph stated plaintiff's claim to be that:

"A defect existed in the electrical cable which permitted the wires contained in the cable to come into contact with each other or into contact with the grounded air conditioner case which caused a short circuit to occur in the cable of the air conditioner at or near the point of entry of the cable into the air conditioner unit."

Plaintiff maintains that it was not required to prove the nature of the defect which caused the fire in order to recover. However, if the evidence

was insufficient to give rise to an inference that a defect in the cable which might have caused the fire existed 16 months earlier upon sale, it was clearly insufficient to support an inference that the fire resulted from some other type of defect and that defect had existed 16 months earlier.

As the proof was insufficient to prove the vehicle to have been defective when it left the hands of Big Wheels, Inc., it was clearly insufficient to prove any defect existing at the time the air-conditioner left Mitchell's hands. Accordingly, the judgment on the counterclaim must be reversed.

The judgments in favor of defendants on plaintiff's complaint are affirmed. That on the counterclaim is reversed.

Affirmed in part; reversed in part.

WEBBER and LEWIS, JJ., concur.