RONALD RALSTON, Plaintiff-Appellant, v. FRANCISCO CASANOVA *et al.*, Defendants-Appellees.

First District (4th Division) No. 83-2973

Opinion filed December 27, 1984.

Anesi, Ozmon, Lewin & Associates, Ltd., of Chicago (Larry M. Evans, of counsel), for appellant.

Barbara Ross, of Ross & Hardies, of Chicago, for appellee Ford Motor Company.

Raymond R. Cusack, of Johnson, Cusack & Bell, Ltd., of Chicago (Thomas H. Fegan, of counsel), for appellee Allied Chemical Corporation.

PRESIDING JUSTICE LINN delivered the opinion of the court:

After suffering personal injuries in an automobile collision while allegedly wearing his seat belt, plaintiff brought a strict liability action against defendant automobile manufacturer and defendant seat belt manufacturer, alleging that manufacturing and design defects rendered the seat belt unreasonably dangerous. Defendants moved to preserve the seat belt assembly and to refrain from destructive testing, and the trial court entered two protective orders to such effect. Plaintiff's expert, in violation of these orders, disassembled the seat belt assembly and performed testing. As a result thereof, defendants moved the trial court to bar plaintiff from offering any testimony on the condition of the seat belt. The trial court entered the requested sanction, and, based thereupon, defendants moved to strike and dismiss or for summary judgment. The trial court granted defendants' motion, and plaintiff appealed.

We affirm the decision of the trial court.

BACKGROUND

While operating his Mercury Cougar on the John F. Kennedy Expressway in Chicago, plaintiff, Ronald Ralston, was involved in a collision with another automobile. Plaintiff sustained injuries to the head, chest and ribs while wearing his seat'belt, and, consequently, brought an action in strict liability against defendant automobile manufacturer, Ford Motor Company (Ford), and defendant seat belt manufacturer, Allied Chemical Corporation (Allied), alleging that the seat belt, due to design and manufacturing defects and defendants' failure to warn, was unreasonably dangerous.

In an attempt to preserve the seat belt assembly involved in the occurrence, defendants moved individually for protective orders. Two such orders were issued by the court on December 30, 1980, and on August 17, 1981, requiring that the seat belt be preserved in its then present condition and location, that defendants be notified of any examinations or tests to be conducted on said belt by plaintiff, and that no destructive testing be performed without further order of the court.

Subsequent to the entry of these protective orders and concededly in violation thereof, plaintiff's expert, Herbert Thomiszer, without notice to defendants, proceeded to disassemble, examine, and test the seat belt assembly. In response to Thomiszer's actions, defendants filed motions to bar testimony, requesting that plaintiff be barred from offering any testimony at trial regarding the condition of the seat belt involved in the occurrence.

In order to determine whether to grant defendants' motions, the trial court ordered each party to submit the names of two experts, from which the court selected and appointed an independent expert, Frank Pepe of the United States Testing Company, to examine the seat belt at issue and report the effect, if any, of Thomiszer's tests upon it. The court also ordered that Thomiszer be redeposed as to the specific actions he performed during his examination of the seat belt assembly. Pepe's report indicated that although Thomiszer's disassembly had been carefully done, his testing had not been conducted in compliance with the applicable Federal Motor Vehicle Safety Standards for seat belt testing and could cause erroneous test results on any subsequent appropriate testing performed on the seat belt.

Based on Pepe's reports, Ford and Allied again moved to bar plaintiff from offering any evidence at trial regarding the condition of the seat belt. The motions to bar testimony were granted by the trial court on December 2, 1982, in an order that barred plaintiff "from presenting any testimony at the trial of this cause regarding the con-

dition of the allegedly defective seat belt which is the subject of this action."

Plaintiff thereafter moved to vacate the sanction order and for reconsideration. On May 13, 1983, the court heard argument on plaintiff's motion to vacate and reconsider and ordered Pepe to appear for an evidentiary hearing to elaborate on his previously filed report. The evidentiary hearing was held on July 20, 1983. At this hearing, Pepe testified at length and in great detail as to the internal workings of the seat belt assembly, the findings of his prior report, and the possible effect of Thomiszer's testing of the seat belt on future tests which might be performed. Further argument on plaintiff's motion to vacate and for reconsideration was heard on July 27, 1983. At the conclusion of this hearing, the trial court found that plaintiff's expert had violated the protective orders and that the violative conduct, the unauthorized tampering, had "thoroughly and permanently compromised" the validity, credibility and possibility of accuracy of any future tests that could be performed on the seat belt assembly involved in the occurrence. Fully aware of the seriousness of the sanction that it had imposed, the trial court denied plaintiff's motion to vacate and for reconsideration.

Thereafter, defendants moved to dismiss or for summary judgment. Several hearings on these motions were held. At the first of these hearings, plaintiff requested a briefing schedule because he felt he needed to respond to defendants. The court scheduled the motion to be heard on September 30, 1983. Plaintiff failed to respond in writing and, at the scheduled hearing, presented the trial court with no written response. After noting how much time and effort had been spent on this case and the seriousness of the sanction that had been imposed, the trial court asked plaintiff why he had prepared no written response to defendants' motion. Plaintiff replied that he did not "feel it was necessary" and that he could respond orally. Finding that it was "absolutely ridiculous" to expect the court to absorb and rule on such a motion without having had any time to think about it, and despite plaintiff's protestation that he did not want more time and wanted to cover the matter that morning, the trial court granted plaintiff more time to file a written response.

A third hearing was held on November 2, 1983. At the outset of this hearing, the trial court denied defendants' motions to dismiss to the extent that it relied on Code of Civil Procedure section 2—615 (Ill. Rev. Stat. 1983, ch. 110, par. 2—615), finding that plaintiff's complaint was adequately pleaded, and considered defendants' motions on the basis of Code of Civil Procedure sections 2—619 and 2—1005. (Ill.

Rev. Stat. 1983, ch. 110, pars. 2—619, 2—1005.) The court phrased the issue before it as whether "any evidence is or can be put in in any way or if this case is still sustainable on the issues of fact."

At this hearing, plaintiff asserted that he could prove a *prima facie* case of products liability without the use of expert testimony concerning the possibility of a specific defect in the allegedly defective seat belt. By way of evidence in support of this assertion, plaintiff submitted only his deposition testimony, in which he stated that he was involved in an automobile accident while wearing his seat belt and that he was thrown against the interior of the auto, sustaining injuries to his head and other parts of his body. From this evidence, plaintiff claimed that he had shown that in the absence of abnormal use or reasonable secondary causes, the seat belt failed to perform in the manner reasonably expected in light of its nature. Although plaintiff postulated that he could "possibly show perhaps that seat belts do not perform as a unit properly," no evidence other than plaintiff's deposition testimony was presented to the trial court. At the conclusion of this third hearing on defendants' motions to dismiss or for summary judgment, the trial court granted the motions. Plaintiff now appeals.

OPINION

Defendants' motions to dismiss or for summary judgment were granted pursuant to Code of Civil Procedure sections 2—619(a)(9) and 2—1005(b) (Ill. Rev. Stat. 1983, ch. 110, pars. 2—619(a)(9), 2—1005(b)), which provide, respectively, as follows:

"Sec. 2—619. Involuntary dismissal based upon certain defects or defenses. (a) Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds. ***
 * * *
(9) That the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim. ***"

"Sec. 2—1005. Summary judgments. ***
(b) For defendant. A defendant may, at any time, move with or without supporting affidavits for a summary judgment in his or her favor as to all or any part of the relief sought against him or her.
 ***
(c) *** The judgment sought shall be rendered without delay if the pleadings, depositions, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law."

"Affirmative matter," as used in section 2—619, has been defined as something in the nature of a defense that negates an alleged cause of action completely or refutes crucial conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from the complaint. (*Illinois Housing Development Authority v. Sjostrom & Sons, Inc.* (1982), 105 Ill. App. 3d 247, 433 N.E.2d 1350.) A section 2—619 motion such as the one at bar is a fact motion that amounts essentially to a summary judgment procedure. (Laycock, *Dispositive Pre-Trial Motions in Illinois-Sections 45, 48 and 57 of the Civil Practice Act,* 9 Loyola Chi. L.J. 823 (1978).) A summary judgment motion asks whether the non-movant, here plaintiff, has presented any evidence to raise a genuine issue of material fact. (Laycock, 9 Loyola Chi. L.J. 823, 838-40.) Where the evidence either raises no issue of material fact, or where crucial issues of material fact are refuted by affirmative matter, fact motions made pursuant to either section 2—619(a)(9) or 2—1005 may properly be granted. Ill. Rev. Stat. 1983, ch. 110, pars. 2—619(a)(9), 2—1005.

In the instant case, defendants moved to dismiss or for summary judgment on the basis of the trial court's grant of their motion to bar, on the grounds that it effectively rendered plaintiff unable to prove and defendants unable to defend against plaintiff's strict liability claim. Plaintiff argues on appeal that the sanction imposed by the trial court was too severe, that the trial court abused its discretion by determining questions of fact as if matters of law, and that plaintiff should be allowed to proceed on the merits. We examine plaintiff's position in light of the particular facts and circumstances of the instant case.

■ The imposition of sanctions for noncompliance with discovery rules and orders rests largely within the discretion of the trial court and will not be disturbed on review unless that discretion has been abused. (*Humboldt-Armitage Corp. v. Illinois Fair Plan Association* (1980), 86 Ill. App. 3d 888, 408 N.E.2d 307.) Supreme Court Rule 219(c)(iv) specifically authorizes the court to enter orders barring a witness from testifying concerning an issue to which a violation of a previously entered discovery order relates. (73 Ill. 2d R. 219(c)(iv).) The proviso attaching to the court's entry of such sanctions is that the orders entered be just. 73 Ill. 2d R. 219(c).

Initially, we note that the sanction entered by the trial court on defendants' motion was not dismissal of the action but rather an or-

der barring plaintiff from "presenting any testimony at trial *** regarding the condition of the allegedly defective seat belt which is the subject of this action." To determine whether this order was just, we must look to the conduct that gave rise to it and to the effect of that conduct on the parties involved.

Plaintiff brought an action based on strict liability. To recover under strict liability in tort, plaintiff must prove that (1) his injury resulted from a condition of the product, (2) that the condition was an unreasonably dangerous one, and (3) that the condition existed at the time the product left the manufacturer's control. (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182.) A *prima facie* case that a product was defective and that the defect existed when it left the manufacturer's control is made by proof that, in the absence of abnormal use or secondary causes, the product failed to perform in the manner reasonably to be expected in light of its nature and intended function. *Tweedy v. Wright Ford Sales, Inc.* (1976), 64 Ill. 2d 570, 357 N.E.2d 449.

While these elements may be proved inferentially by either direct or circumstantial evidence (*Tweedy v. Wright Ford Sales, Inc.* (1976), 64 Ill. 2d 570, 357 N.E.2d 449), it is clear that preservation of the allegedly defective product, if possible, is of the utmost importance in both proving and defending against a strict liability action. Here, defendants, fully aware of the need to preserve the seat belt assembly involved in the occurrence, timely moved to preserve the belt in its then present condition and at its then present location, specifically requesting that they be notified of and be given a reasonable opportunity to be present at any inspection conducted by plaintiff or any other parties to the suit. The trial court, on two separate occasions and in two separate protective orders, granted defendants' respective motions, preserving the seat belt in its present condition, ordering that no testing be performed without giving each defendant notice and an opportunity to be present, and prohibiting any destructive testing without further order of the court.

Despite the clear and repeated protective orders entered by the trial court, plaintiff's expert proceeded to disassemble, inspect, and test the seat belt, without giving notice to defendants. An independent expert appointed by the court testified that the effect of plaintiff's expert's conduct was to render questionable the results of any subsequent tests performed on the seat belt assembly. In light of this testimony, defendants moved the court for an order barring plaintiff from presenting any testimony on the condition of the subject seat belt. After several in-depth hearings and much deliberation, the trial

court, fully aware of the seriousness of the sanction it was imposing, granted defendants' motion to bar testimony, pursuant to its authority under Supreme Court Rule 219(c) (73 Ill. 2d R. 219(c)). We cannot say, considering the particular circumstances of this case and the full deliberation afforded the matter by the concerned trial court, that the entry of the order barring plaintiff's testimony was an abuse of discretion.

Having found that the sanction imposed by the trial court was not error, we turn to plaintiff's contention that the trial court abused its discretion by determining questions of fact as matters of law in granting defendants' motion to dismiss or for summary judgment.

■■ ■ Plaintiff asserts that such questions as whether the product was destroyed by the tests conducted by plaintiff's expert, whether the product was the proximate cause of plaintiff's injury, and whether there is any reason to doubt the reliability of subsequent testing are questions of fact to be resolved by the jury. What plaintiff fails to realize is that resolution of these factual questions was not the basis of the trial court's grant of defendants' motion to dismiss or for summary judgment. As noted previously, both a motion to dismiss made pursuant to section 2—619 and a motion for summary judgment are fact motions. The phrase "fact motion" refers not, as plaintiff's assertion suggests, to the questions raised by the motions, but rather to the information on which the motions and their resolutions must be based. (Laycock, *Dispositive Pre-Trial Motions in Illinois-Sections 45, 48 and 57 of the Civil Practice Act*, 9 Loyola Chi. L.J. 823, 825-26 (1978).) Fact motions must be based on facts, as proven by admissions or by sworn and competent witnesses whose testimony has been reduced to writing. Consideration of such motions are preliminary inquiries to determine whether there is a genuine issue of material fact which must be determined by the factfinder. (Laycock, 9 Loyola Chi. L.J. 832, 839.) "Genuine" is construed to mean that there is evidence to support the position of the nonmoving party. *Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457.

■ The record plainly reveals that the trial court did not make factual findings *per se* on the various issues plaintiff presents. The trial court determined whether, as a matter of law, the affidavits, depositions, exhibits and pleadings in the case raised a genuine issue as to any fact material to the elements of plaintiff's claim. The trial court determined, in light of all the documents before it including the December 2, 1982, order barring testimony regarding the condition of the seat belt at issue, that no genuine issue of material fact had been raised. The correctness of this threshold legal finding leads us to the

merits of plaintiff's final contention.

Plaintiff's contention on appeal is that he should be permitted to proceed on the merits. Relying on *Tweedy v. Wright Ford Sales, Inc.* (1976), 64 Ill. 2d 570, 357 N.E.2d 449, plaintiff contends that even barring expert testimony as to the condition of the seat belt at issue, plaintiff would be able to establish a *prima facie* case of strict liability, should this court find that the trial court's order, barring all evidence as to the condition of the seat belt, was an abuse of discretion.

Assuming, *arguendo*, that the order entered by the trial court was intended to bar all testimony as to the condition of the belt both prior to and subsequent to the belt's having been tampered with by plaintiff's expert, and that this appellate court found that order to be unjust, plaintiff has nevertheless failed to present any evidentiary facts to either this court or the court below that would support the elements of his claim.

■ While a plaintiff is not normally required to prove his case at the summary judgment stage, he must present some evidentiary facts to support the elements of his claim. (*Mateika v. La Salle Thermogas Co.* (1981), 94 Ill. App. 3d 506, 418 N.E.2d 503.) Even though a complaint and answer may purport to raise issues of material fact, if such issues are not further supported by evidentiary facts through affidavits or such, summary judgment is proper. *Carruthers v. Christopher Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457.

> "It was plaintiff's responsibility, on defendant's motion for summary judgment, to bring forth all facts and evidence that he believed would satisfy his burden of proving the existence of an unreasonably dangerous condition which existed at the time the product left defendant's control and which proximately caused the injury. [Citation.] Plaintiff failed to do so and cannot claim that at trial he could have produced witnesses to substantiate his claim. [Citation.] There is nothing in this record to reveal that plaintiff needed additional time to complete discovery or preparation of his case before the motion for summary judgment was heard." *Coleman v. Verson Allsteel Press Co.* (1978), 64 Ill. App. 3d 974, 979, 382 N.E.2d 36, 40.

■ ■ While it may indeed be possible to introduce sufficient evidence to establish a *prima facie* case of strict liability even in the absence of the allegedly defective product itself (*Mateika v. La Salle Thermogas Co.* (1981), 94 Ill. App. 3d 506, 418 N.E.2d 503), or of expert testimony concerning the presence of a specific defect in the allegedly defective product (*Tweedy v. Wright Ford Sales, Inc.* (1976), 64 Ill. 2d 570, 357 N.E.2d 449), plaintiff must present *some* evidence

to raise a material issue as to the absence of abnormal use and the elimination of reasonable secondary causes to prove what condition the product was in when it left the defendants' control. (*Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 454 N.E.2d 197.) The requirement that the plaintiff establish the precise cause of his injury may, under certain circumstances, be excused in an action grounded on strict liability provided plaintiff establishes some credible basis for the reasonable inference that a condition of the product proximately caused the injury. (*Neighbors ex rel. American States Insurance Co. v. City of Sullivan* (1975), 31 Ill. App. 3d 657, 334 N.E.2d 409) and for the elimination of reasonable secondary causes. *Livingston Service Co. v. Big Wheels, Inc.* (1981), 96 Ill. App. 3d 591, 421 N.E.2d 1042.

 █ Here, the only evidence presented by plaintiff was his own deposition testimony stating that he was wearing a seat belt while operating his vehicle and that he sustained injuries during an automobile collision. However, it cannot legally be presumed from evidence of the mere occurrence of an accident involving a product that the product was defective when it left the manufacturer's control (*Mullen v. General Motors Corp.* (1975), 32 Ill. App. 3d 122, 336 N.E.2d 338); an inference of defectiveness may not be drawn from the mere fact of injury. (*Huff v. Elmhurst-Chicago Stone Co.* (1981), 94 Ill. App. 3d 1091, 419 N.E.2d 561.) Where, as here, plaintiff has failed to produce any evidence to prove the allegedly defective condition of the product existed at the time the product left defendants' control other than his deposition testimony stating the fact of injury involving the product, he has not presented evidentiary facts sufficient to withstand a motion for summary judgment. *Mateika v. La Salle Thermogas Co.* (1981), 94 Ill. App. 3d 506, 418 N.E.2d 503.

Plaintiff here had sufficient time to complete discovery and preparation of his case prior to the motion to dismiss/summary judgment hearings. Several hearings were held on defendants' motions to dismiss or for summary judgment. Plaintiff requested a briefing schedule and, despite this, failed to respond in writing until requested to do so by the trial court. Lengthy evidentiary hearings were held at which plaintiff could have introduced evidence to support the elements of his claim. Moreover, there is nothing in the record that suggests plaintiff either needed or requested additional time to complete discovery or preparation of this case before defendants' motions were heard. He cannot now claim that at trial he would have produced the necessary evidence to prove his claim of a defective product. In light of the trial court's order barring plaintiff's testimony on the condition of the seat belt and in the absence of any evidence, other than the mere fact of

injury, indicating any design or manufacturing defect, we cannot find that the trial court's grant of defendants' motion to dismiss or for summary judgment was improper.

For all of the foregoing reasons, we affirm the decision of the trial court.

Affirmed.

JOHNSON and ROMITI, JJ., concur.