Willie **PARKER**, Plaintiff–Appellant,

v.

**FREIGHTLINER CORPORATION and National Seating Company,** Defendants–Appellees.

No. 89–2827.

United States Court of Appeals, Seventh Circuit.

Argued June 14, 1990.

Decided Aug. 13, 1991.

James P. Costello, Bradley D. Birge (argued), Des Plaines, Ill., for plaintiff-appellant.

Jeffrey L. Madoff, Matkov, Salzman, Madoff & Gunn, James K. Perrin (argued), Haskell & Perrin, David P. Cutler (argued), Terrence J. Goggin, Goggin, Cutler & Hull, Chicago, Ill., for defendants-appellees.

Before POSNER, FLAUM and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Willie Parker, an over-the-road truck driver for Consolidated Freightways, was injured while driving a tractor trailer from Peru, Illinois to Kansas City, Missouri. Seeking compensation for the injuries he suffered, Parker brought a single-count, products liability suit against Freightliner Corporation, the manufacturer of the vehicle, and National Seating Company, the manufacturer of the seating suspension system in the Freightliner tractor. Parker now appeals from the district court's grant of summary judgment in favor of both defendants.

## I.

Parker's suit arises out of a hauling trip he made to Kansas City on November 20, 1983. Before starting out for Kansas City, Parker inspected the truck he was to drive, a Freightliner 1600 series tractor equipped with a National Seating Cush–N–Air Model 95 air suspension seating system. In the tractor unit, Parker found two "cry cards" —a system drivers for Consolidated Freightways used to alert the company, as well as other drivers, to any problems or damage to a tractor trailer or its component parts. According to Parker, one of the cry cards registered a previous driver's

complaint about the seat's suspension system and stated that the seat needed to be replaced. His own inspection similarly revealed that the tractor seat was worn and unstable, rocked back and forth, and leaked air. Parker informed Consolidated Freightway's dispatchers about the problems, but after checking the seat they assured him that the seat was fine.

He then proceeded on his run to Kansas City. During the trip, the tractor's seat continually lost air, forcing Parker to add air every 18–25 minutes (3–5 times before the accident) in order to keep the seat comfortably inflated. The accident occurred when Parker, driving in a heavy rain at approximately 45–50 miles per hour, struck a dip in the road and the tractor seat collapsed or "bottomed out." As a result of the seat's alleged failure, Parker was catapulted into the roof of the cab and injured.

Despite the collapse of the seat and the injuries he suffered, Parker continued to Kansas City. Upon his arrival, he completed a cry card describing the problems he had experienced with the tractor's suspension system and air seat. He later filed a workers' compensation claimant's statement for the occurrence. In his statement, Parker asserted that the tractor he was driving had a "bad front end" and possibly "bad springs." Parker also alleged that "with the tractor's front end in such a bad condition, when it passed over a bump in the road I [Parker] hit my head on the top of the cab and was thrown partly out of the seat jamming my head, neck and shoulder."

On November 1, 1985, Parker filed his original complaint, which named both Freightliner and National Seating as defendants, in the Circuit Court of Cook County, Illinois. After being served with a summons, National Seating removed the case to the United States District Court for the Northern District of Illinois. But, although named as a defendant in the lawsuit, Freightliner was not served with a summons and did not become involved in the suit at that time.

Despite Freightliner's absence, National Seating and Parker proceeded with dis-

covery pursuant to a district court order requiring all occurrence discovery to be completed by July 31, 1986. The order also set the same date for a further status hearing. Parker, however, ignored three sets of interrogatories which National Seating had filed for answer and discovery was not completed by the court-ordered date. The plaintiff's disregard for the district court's orders did not end there. In July, Parker's counsel failed to appear for the scheduled status hearing. When informed of Parker's noncompliance with its previous order, the district court entered an order requiring Parker to answer National Seating's interrogatories by August 7, 1986, and set a further status conference for August 14, 1986. The plaintiff appeared at this hearing, but again failed to provide signed answers to the interrogatories. So, the district court entered yet another order requiring Parker to provide National Seating with signed answers by August 15, 1986, ordered all discovery completed by November 12, 1986, and scheduled the final pretrial order to be due on December 3, 1986.

Frustrated by Parker's lack of cooperation and diligence in pursuing the litigation, National Seating brought a motion to bar plaintiff's expert testimony because of his failure to comply with the court's discovery orders. Appearing before the district court, Parker's counsel finally provided signed answers for the first set of interrogatories, but objected to the second set and failed to respond to the set of interrogatories directed to experts. He also refused, or was unable, to disclose the names of expert witnesses he intended to call to support any of the allegations of his complaint. At the hearing, Parker's attorney also admitted to the court that he had not yet filed the final pre-trial order required by the order. On December 5, 1986, apparently less than impressed by Parker's repeated failures to comply with its orders, the district court granted National Seating's motion to bar any expert testimony that might be offered by Parker.

Four days later, Freightliner made its first appearance before the district court to

ask for permission to file an answer to Parker's complaint.[1] The district court granted the request and Freightliner promptly filed its answer to Parker's complaint the next day, December 10, 1986. Although Parker did not object to Freightliner's late answer at the time, he did bring a motion for voluntary dismissal against Freightliner pursuant to Federal Rule of Civil Procedure 41. But, rather than grant the dismissal, the court continued Parker's motion in order to give the parties an opportunity to settle the litigation.

Attempts at settlement, however, proved futile. While National Seating agreed to settle the case, its proposal was contingent on Freightliner's agreement to match its $1,500.00 settlement contribution. This was an offer Freightliner could (and did) refuse. Finally, recognizing that no settlement agreement was forthcoming, the district court granted the plaintiff's motion for a voluntary dismissal with respect to both defendants on February 6, 1987.

Fearing that a voluntary dismissal would allow Parker to avoid the district court's previous order prohibiting his use of expert testimony, National Seating shortly thereafter brought a motion to amend the court's order granting Parker's voluntary dismissal to include the condition that, in the event Parker elected to refile his original action, the court's December 5, 1987 order barring expert testimony would remain in effect in any refiled action.[2] Over Parker's objection, the district court agreed and amended the order on February 17, 1987. Parker took no steps at that time to challenge the district court's order.

Nearly a year later, Parker refiled his original action in federal district court—this time promptly serving both Freightliner and National Seating. The parties again commenced discovery, with fact discovery to have been closed on January 2, 1989, and experts to have been identified by January 17, 1989. But, the plaintiff again did not disclose the names of his expert witnesses by the court-imposed deadline. Both defendants then filed motions for summary judgment on March 1, 1989. After reviewing the briefs of all parties, the district court concluded that Parker had failed to refute reasonable secondary causes of the accident and granted summary judgment in favor of both defendants.

## II.

We face two challenges to our jurisdiction over this appeal. First, Parker maintains that the district court lacked jurisdiction over Freightliner because he had voluntarily dismissed his action against it pursuant to FED.R.CIV.P. 41(a)(1)(i). *See McCall–Bey v. Franzen*, 777 F.2d 1178 (7th Cir.1985); *In re International Business Machines Corp.*, 687 F.2d 591, 598, 600–03 (2d Cir.1982). As a result, Parker argues that the district court's order barring his use of expert witness testimony as a discovery sanction was a legal nullity with respect to Freightliner and, consequently, he should have been free to utilize expert witnesses in his refiled case against Freightliner. Freightliner views the situation quite differently. It maintains that Parker's dismissal was actually pursuant to Rule 41(a)(2)—not Rule 41(a)(1)(i)—and that Parker's present appeal is untimely because he was required to appeal the dismissal immediately because the attached condition substantially prejudiced his ability to bring a later suit. *See Cauley v. Wilson*, 754 F.2d 769 (7th Cir.1985). As an initial matter, we therefore must determine what type of voluntary dismissal was involved in the initially filed lawsuit.

Under Rule 41(a)(1)(i), "an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first oc-

---

1. After waiting more than ten months from the commencement of his lawsuit, Parker finally requested that a summons be issued to Freightliner on September 12, 1986. Four days later, Freightliner was served with notice—albeit tardy—of Parker's suit. Freightliner, however, did not respond to the complaint until December 9, 1986.

2. Freightliner joined the National Seating motion.

curs." FED.R.CIV.P. 41(a)(1)(i). Thus, as one court has noted:

> Rule 41(a)(1)(i) is the shortest and surest route to abort a complaint when it is applicable. So long as plaintiff has not been served with his adversary's answer or motion for summary judgment he need do no more than file a notice of dismissal with the Clerk. That document itself closes the file. There is nothing the defendant can do to fan the ashes of that action into life and the court has no role to play. This is a matter of right running to the plaintiff and may not be extinguished or circumscribed by adversary or court. There is not even a perfunctory order of court closing the file. Its alpha and omega was the doing of the plaintiff alone.

*American Cyanamid Co. v. McGhee*, 317 F.2d 295, 297 (5th Cir.1963); *see also McCall–Bey*, 777 F.2d at 1184; *Thorp v. Scarne*, 599 F.2d 1169, 1176 (2d Cir.1979). Recognizing that Rule 41(a)(1)(i) "preserve[s] the plaintiff's right to take a voluntary nonsuit and start over so long as the defendant is not hurt," *McCall–Bey*, 777 F.2d at 1184, we have followed a bright-line approach to its application and have held that a plaintiff may dismiss his action up until the time the defendant has either answered the complaint or moved for summary judgment; the rule does not require a court to examine the facts of each case in order to determine "whether the litigation was far enough along—whether the amounts of discovery and argument about the legal issues were sufficient—to require that it proceed to judgment." *Winterland Concessions Co. v. Smith*, 706 F.2d 793, 795–96 (7th Cir.1983).

Because the parties do not dispute that Parker filed his motion to dismiss before Freightliner served him with an answer or motion for summary judgment, Parker claims that he was entitled to Rule 41(a)(1)(i) treatment as a matter of law. We disagree for neither Parker's course of conduct nor the district court's treatment of his motion support his contention that he sought a Rule 41(a)(1)(i) dismissal in 1986. At no time did Parker specify that he was pursuing a Rule 41(a)(1)(i) dismissal; in-stead, the record indicates only that he made a Rule 41 motion for voluntary dismissal. In addition, rather than simply filing his dismissal with the clerk of the court, he filed his motion with the court for its consideration—an unnecessary action if he intended to voluntarily dismiss his action pursuant to Rule 41(a)(1)(i). Moreover, the district court treated Parker's motion as a Rule 41(a)(2) voluntary dismissal requiring the approval of the court. While the district court's minute order does not indicate whether its dismissal order was entered under Rule 41(a)(1)(i) or Rule 41(a)(2), at the February 17, 1987 hearing to amend the dismissal order, the district court clearly noted that it was necessary "to amend the dismissal order under the terms of Rule 41(a)(2) as to the expert witnesses." Parker's failure to attempt to correct the district court's treatment of his motion then precludes him from maintaining a different position now.

■ Having established that the dismissal was based on Rule 41(a)(2), we next address Freightliner's counter-argument that Parker's current appeal is untimely. Normally, of course, a plaintiff would have no reason (or right) to appeal the district court's grant of a voluntary dismissal since it would have received the relief it requested. *Cauley v. Wilson*, 754 F.2d 769, 770 (7th Cir.1985). However, as Freightliner points out, a plaintiff may sometimes obtain immediate appellate review of a voluntary dismissal if the conditions imposed on the dismissal legally prejudice the plaintiff. *Id.*; *Bowers v. St. Louis Southwestern Ry. Co.*, 668 F.2d 369 (8th Cir.1981), *cert. denied*, 456 U.S. 946, 102 S.Ct. 2013, 72 L.Ed.2d 469 (1982); *LeCompte v. Mr. Chip Inc.*, 528 F.2d 601 (5th Cir.1976).

■ Freightliner maintains that the district court's order prohibiting Parker's use of expert witness testimony in any refiled action constituted legal prejudice because it made it virtually impossible for him to bring a successful suit. We disagree for two reasons. First, as a general rule, legal prejudice exists only when the grant of a dismissal severely circumscribes

the plaintiff's ability to re-initiate his lawsuit. *Bowers*, 668 F.2d at 370. While the court's bar against expert witness testimony may have amounted to an adverse condition, it did not constitute legal prejudice to the plaintiff.[3] Second, Freightliner's reliance on *Cauley* for the proposition that Parker could have—and, indeed, was required to have—brought his appeal immediately is misplaced. *See Richards v. Firestone Tire & Rubber Co.*, 928 F.2d 241 (7th Cir.1991). In *Richards*, a factually similar case, the plaintiff attempted to voluntarily dismiss his case without prejudice in order to avoid a court order barring his tardy addition of an expert witness. When the district court granted the dismissal on the condition that the order barring Richards' late addition of an expert witness in any refiled suit, Richards appealed the discovery order. Reasoning that the district court's order of dismissal did not constitute a final decision and that the finality doctrine embodies a "strong interest in allowing trial judges to supervise pretrial and trial procedures without undue interference," the court held that we lacked jurisdiction to review the district court's dismissal order because it merely "put [the] case on hold until Richards decide[d] to continue to trial." *Id.* at 241–42 (citing *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 380, 107 S.Ct. 1177, 1184, 94 L.Ed.2d 389 (1987)). Moreover, the court distinguished *Cauley*, noting that it stands only for the proposition that " 'an order that ends litigation in one dispute-resolution system is final and appealable even though it kicks off litigation in another.' " *Id.* at 243 (quoting *Disher v. Information Resources, Inc.*, 873 F.2d 136, 139 (7th Cir.

1989)). Therefore, the court held that *Cauley* did not support jurisdiction over the appeal where Richards retained his right to appeal the district court's eventual judgment. *Id.* Accordingly, Parker was not required to appeal immediately the district court's condition limiting his ability to name expert witnesses in any refiled action, but rather, was forced to wait until now when he appealed the district court's eventual judgment.

### III.

Parker next maintains that the district court abused its discretion when it barred his use of expert testimony pursuant to Federal Rule of Civil Procedure 37(b)(2)(B).[4] As we have stated in the past, "[j]udges must be able to enforce deadlines," *In re Kilgus*, 811 F.2d 1112, 1118 (7th Cir.1987) (discussing sanction of default), and Rule 37(b) sanctions provide the district court with one means for assuring that dilatory litigants timely comply with its discovery orders. *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 475 (7th Cir.1984). We will therefore overturn a district court's imposition of Rule 37(b) "sanctions only where the court has abused its discretion." *Id.* at 472 (citing *National Hockey League v. Metro Hockey Club*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976); *Hindmon v. National–Ben Franklin Life Ins. Co.*, 677 F.2d 617, 620 (7th Cir.1982)). Moreover, because the district court is in the best position to determine whether a party has complied with its discovery orders, the district court's discretion is especially broad. *Tamari*, 729 F.2d at 472; *Loctite Corp. v. Fel–Pro, Inc.*,

---

3. It is possible under Illinois law to establish a *prima facie* case of strict liability even in the absence of expert testimony addressing the presence of a specific defect in the product at issue. *See Tweedy v. Wright Ford Sales, Inc.*, 64 Ill.2d 570, 2 Ill.Dec. 282, 357 N.E.2d 449 (1976); *Ralston v. Casanova*, 129 Ill.App.3d 1050, 85 Ill.Dec. 76, 473 N.E.2d 444 (1984).

4. Rule 37(b)(2)(B) provides:
   (b) **Failure to Comply with Order.**
   * * * * * *
   (2) *Sanctions by Court in Which Action is Pending.* If a party or an officer, director, or managing agent of a party or a person desig-

nated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
   * * * * * *
   (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence.
   Fed.R.Civ.P. 37(b)(2)(B).

667 F.2d 577, 582 (7th Cir.1981); *Patterson v. Coca–Cola Bottling Co.*, 852 F.2d 280, 283 (7th Cir.1988) (trial court's sanctions will not be set aside unless no reasonable person could agree with the trial court's assessment of the issue under consideration) (citing *3 Penny Theater Corp. v. Plitt Theatres, Inc.*, 812 F.2d 337, 339 (7th Cir. 1987).

Reviewed under this standard, the record of the proceedings before the district court clearly demonstrates that Parker wilfully disregarded the district court's orders. The district judge originally scheduled occurrence discovery to be completed by July 31, 1986, as well as a status hearing for the same date. Counsel for Parker, however, filed no discovery requests, declined to answer a set of interrogatories filed by National Seating and failed to appear for the July status hearing. Despite later being ordered to respond to National Seating's interrogatories by August 7, 1986, Parker did not, although he did attend the August status hearing. At that time, Parker's attorneys agreed that discovery should be completed by November 12, 1986 and agreed to file a pretrial order with the court by December 3, 1986. Counsel for Parker, stating "[w]e'll be in on a motion if there's any problem to tell the Court what specific problems there are before then," also agreed to file a motion with the court should additional time for discovery be required. Contrary to his earlier assurances, counsel for Parker did not comply with the court's order setting the discovery schedule[5] and did not seek to obtain an extension of time for discovery. When Parker's attorney appeared before the court on December 5, 1986, he had not filed the final pretrial order materials which the court had scheduled to be due two days earlier; nor had he met National Seating's request for interrogatories and the names of any expert witnesses that Parker intended to call at trial.

Parker now offers several explanations—none of them convincing—to excuse his failure to comply with the court's discovery orders. He first blames Freightlin-

er for his delay, reasoning that Freightliner's late entry into the lawsuit made it impossible for him to name his experts in a timely fashion because he was uncertain whether he needed to retain experts capable of addressing the defects of National Seating's seat, Freightliner's trucks, or both. Yet, he fails to acknowledge that it was his own delay in serving Freightliner that created this problem. Next he argues that counsel for National Seating refused to cooperate with discovery, but the record reveals that Parker never sought the court's help in curbing these alleged discovery abuses. Finally, while seemingly admitting his own responsibility for his noncompliance, Parker maintains that the district court failed to recognize that he was actively engaged in relevant discovery in several closely-related cases. Parker's assertions to the contrary notwithstanding, the district court did recognize and consider the "mitigating" circumstance of his counsel's involvement with discovery in several cases involving the same defendants and similar incidents. In the opinion of the district court, however, his repeated refusal to acknowledge or obey its discovery orders simply outweighed any mitigating facts or considerations. And, though the court had not warned Parker that he faced possible sanctions as a result of his failure to comply with its orders, as we have noted, "[a] district court is not required to fire a warning shot." *Hal Commodity Cycles Management Co. v. Kirsh*, 825 F.2d 1136, 1139 (7th Cir.1987). We therefore conclude that the district court did not abuse its discretion in adopting the limited sanction of barring Parker from calling expert witnesses to testify on his behalf in the original suit or in any subsequently refiled action. *See Bowe v. United States*, 574 F.Supp. 196 (E.D.Wis. 1983) (failure of plaintiff to designate expert witnesses per order of court sufficient grounds to support motion precluding plaintiff from calling any expert witnesses).

### IV.

Finally, Parker argues that the district court erred when it granted sum-

---

5. National Seating was, however, able to depose Parker in late August of 1986.

mary judgment in favor of the defendants for failure to raise a genuine issue of material fact. Under Illinois products liability law,[6] a plaintiff must establish the existence of three elements: his injury must be the result of the condition of the product; the condition of the product must be unreasonably dangerous; and, the condition must have existed when the product left the manufacturer's control. *Coney v. J.L.G. Indus., Inc.,* 97 Ill.2d 104, 73 Ill.Dec. 337, 340, 454 N.E.2d 197, 200 (1983); *Mazikoske v. Firestone Tire & Rubber Co.,* 149 Ill.App.3d 166, 102 Ill.Dec. 729, 500 N.E.2d 622 (1986). To establish the second and third elements, the Illinois Supreme Court has held that:

> [a] *prima facie* case that a product was defective and that the defect existed when it left the manufacturer's control is made by proof that in the absence of abnormal use or reasonable secondary causes the product "failed to perform in the manner reasonably to be expected in light of [its] nature and intended function."

*Tweedy v. Wright Ford Sales, Inc.,* 64 Ill.2d 570, 2 Ill.Dec. 282, 285, 357 N.E.2d 449, 452 (1976) (citations omitted); *see also Hill v. International Harvester Co.,* 798 F.2d 256, 259 (7th Cir.1986); *Ralston v. Casanova,* 129 Ill.App.3d 1050, 85 Ill.Dec. 76, 81, 473 N.E.2d 444, 449 (1984). However, while the three elements can be established by either direct or circumstantial evidence, *see, e.g., Abel v. General Motors Corp.,* 155 Ill.App.3d 208, 108 Ill.Dec. 28, 507 N.E.2d 1369 *app. denied,* 116 Ill.2d 547, 113 Ill.Dec. 291, 515 N.E.2d 100 (1987), the plaintiff must introduce evidence with "a reasonable probative force, for the jury will not be permitted to engage in mere speculation or imagination." *Rockett v. Chevrolet Motor Div., General Motors Corp.,* 31 Ill.App.3d 217, 334 N.E.2d 764, 768 (1975). We review the facts of this case in light of the enunciated standard.

■ With respect to National Seating's liability, Parker maintained that it should be held strictly liable for his accident because the design of the seat was defective and caused it to collapse. In support of its motion for summary judgment, National Seating argued to the district court that Parker had failed to introduce sufficient evidence to refute two reasonable secondary causes for the accident: the poor road and weather conditions at the time of the accident and Parker's admission that the seat was in poor repair. Parker now maintains that the district court erred in its conclusion that these matters were reasonable secondary causes of the product's failure and, in the alternative, its decision respecting his failure to produce evidence sufficient to negate the existence of these causes.

Both arguments fail. Obviously, if the seat was in a state of disrepair, Consolidated Freightway's failure to correct the problem would constitute a reasonable secondary cause of the plaintiff's injuries. In his deposition, as well as in other statements, Parker himself admitted that the seat was in disrepair prior to the start of his hauling trip. Specifically, he stated that the seat was worn, rocked unusually back and forth, and failed to remain inflated. Parker's own testimony about the cry cards also reveals that at least one previous driver had complained about the seat's suspension system. In addition, there was also deposition testimony indicating that a seat would not "bottom out" unless it was insufficiently filled with air. Thus, the evidence in the record supports the conclusion that the seat's state of disrepair was a reasonable secondary cause of the accident.

In order to defeat National Seating's motion for summary judgment then, Parker was required to demonstrate that there was a disputed issue of material fact with respect to the existence of this secondary cause. *See, e.g., Hill,* 798 F.2d at 259–60; *Ralston,* 85 Ill.Dec. at 83, 473 N.E.2d at 451. In the district court, Parker offered several pieces of evidence—a complaint in another case, a patent application for an improved seat design, his own testimony, and deposition testimony regarding the seat's warranty—in support of his claim. The district court correctly concluded that

---

**6.** The parties agree that Illinois law governs this case.

the complaint and patent application were inadmissible. Parker's remaining evidence concerning the seat's 500,000 mile warranty and his testimony about the incident also fails to provide a sufficient basis to preclude summary judgment since circumstantial evidence will negate other reasonable causes of an accident only if the evidence "justifies an inference of probability as distinguished from mere possibility." *Varady v. Guardian Co.*, 153 Ill.App.3d 1062, 106 Ill.Dec. 908, 911, 506 N.E.2d 708, 711 (1987); *see also Mateika v. LaSalle Thermogas Co.*, 94 Ill.App.3d 506, 49 Ill.Dec. 649, 418 N.E.2d 503 (1981). We therefore agree with the defendant that Parker's inability to offer sufficient evidence to dispel the probability (or to create a genuine issue of material fact) that the seat's state of disrepair was a reasonable secondary cause of the accident supports the district court's grant of summary judgment in favor of National Seating.[7]

Finally, Freightliner's liability, under Parker's theory of the case, rests on the existence of a defect in the tractor's suspension system. After considering the evidence, the district court concluded that Parker had failed to demonstrate "a connection between the alleged defect in the suspension of the tractor and the alleged cause of his injury" and granted summary judgment in favor of Freightliner. On appeal, Parker did not challenge the court's rulings on evidence he attempted to introduce[8] or its determination that he had presented insufficient evidence to satisfy Illinois law's requirement that a products liability action be based on more than "mere speculation, guess or conjecture." *Mateika*, 49 Ill.Dec. at 650, 418 N.E.2d at 505. We therefore need not address the propriety of the court's grant of summary judgment in favor of Freightliner.[9]

### V.

For the foregoing reasons, the decision of the district court granting summary judgment in favor of Freightliner and National Seating is AFFIRMED.

---

7. In light of this conclusion, we need not consider whether the road conditions at the time of the accident were a reasonable secondary cause which Parker was required to negate.

8. Parker attempted to introduce a 1974 Department of Transportation study on the effects of vibration on driver performance, but the court ruled that it was incomplete and inadmissible

hearsay. A petition signed by thirteen drivers for Consolidated Freightways complaining about the poor ride of the Freightliner trucks was similarly rejected as inadmissible hearsay.

9. In any event, our review of the record indicates that the district court's determination of this issue was also correct.