RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0207P (6th Cir.)
File Name: 00a0207p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

STEPHEN E. DUFFY; SUE ANN
DUFFY,
     *Plaintiffs-Appellants,*

     *v.*

FORD MOTOR COMPANY,
     *Defendant-Appellee.*

Nos. 98-5950/
6112/6746;
99-5017

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
Nos. 94-02124; 98-02103—Bernard A. Friedman,
District Judge.

Argued: December 10, 1999

Decided and Filed: June 27, 2000

Before: BATCHELDER and MOORE, Circuit Judges;
O'MALLEY,[*] District Judge.

———————

[*] The Honorable Kathleen McDonald O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

1

———————————

**COUNSEL**

**ARGUED:** Patrick M. Ardis, WOLFF ARDIS, Memphis, Tennessee, for Appellants. Lee Allen Mickus, WHEELER, TRIGG & KENNEDY, Denver, Colorado, for Appellee. **ON BRIEF:** Patrick M. Ardis, Garrett M. Estep, WOLFF ARDIS, Memphis, Tennessee, for Appellants. Lee Allen Mickus, Paul F. Hultin, WHEELER, TRIGG & KENNEDY, Denver, Colorado, Stephen A. Marcum, BAKER, DONELSON, BEARMAN & CALDWELL, Huntsville, Tennessee, for Appellee.

MOORE, J., delivered the opinion of the court, in which BATCHELDER, J., joined. O'MALLEY, D. J. (pp. 22-30), delivered a separate opinion concurring in part and dissenting in part.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge. Stephen E. Duffy and Sue Ann Duffy ("the Duffys"), the plaintiffs-appellants, voluntarily dismissed their personal injury lawsuit against the defendant-appellee, Ford Motor Company ("Ford"), on the third day of trial. The written dismissal order entered several days later imposed two conditions on the voluntary dismissal: that the Duffys pay Ford's litigation costs, including attorney fees, if the case is refiled; and that the rulings from the original action (including most evidentiary rulings and a partial grant of summary judgment) govern the refiled action as the law of the case. When the Duffys refiled their case approximately one year later, the district court dismissed it without prejudice because the Duffys were unable to pay Ford's costs. The Duffys now appeal the conditions imposed by the district court in connection with the first dismissal. We hold that, under the

renewed opportunity to satisfy the condition of payment of Ford's costs imposed by the trial court.[10]

unique circumstances of this case, the district court abused its discretion in failing to consider whether the Duffys themselves — rather than their attorneys — were responsible for the dilatory conduct of the trial. We also hold that it was an abuse of discretion to impose those litigation costs and to apply the law of the original case to the refiled case without giving the Duffys sufficient notice of those conditions and allowing them an opportunity to withdraw their motion to dismiss prior to entering the first dismissal. Therefore, we **VACATE** the district court's order of dismissal and the related orders and **REMAND** for the district court to reconsider its rulings in light of this opinion.

## I. BACKGROUND

The Duffys originally filed this products liability suit against Ford in federal court in February 1994, alleging several state-law claims arising out of the death of their son, William Duffy, who was killed in an accident when his Bronco II collided with another vehicle and rolled over. The district court dismissed the Duffys' fraud, deception, and misrepresentation claims through a partial grant of summary judgment to Ford, leaving only the Duffys' negligence and strict liability claims for trial.

After repeated rescheduling, the trial commenced on January 13, 1997. On the third day of trial, the Duffys sought to introduce the expert testimony of two witnesses: Thomas J. Feaheny, a former Ford engineer who was to testify as to the instability of the Bronco's design and the vehicle's propensity to roll over; and Officer Mruk, a Memphis police investigator who was to give an opinion as to whether William Duffy was wearing a seat belt at the time of the accident. After a hearing, the district court decided to exclude the testimony of those two witnesses, finding that Feaheny's testimony did not pass the *Daubert* test and that Mruk could not give an expert opinion as to seat belt usage, because the Duffys had not listed him as an expert witness in the final pretrial order. In the wake of these rulings, the Duffys moved

---

[10]Again, I would provide this renewed opportunity to satisfy the cost condition because the value of, or burden imposed by, that condition is materially different in the absence of the concomitant law-of-the-case condition.

for voluntary dismissal of their case pursuant to Federal Rule of Civil Procedure 41(a)(2). Ford did not oppose the motion but stated that it was "not willing . . . to forego costs." J.A. at 327 (Tr.). The district court orally granted the motion and agreed with Ford that the Duffys would be responsible for Ford's costs should they choose to refile. Some discussion ensued between the district court and the Duffys' counsel regarding whether those costs would include attorney fees, but the question was not resolved at that time.

On January 24, 1997, the district court issued a written order granting the Duffys' motion on the condition that the Duffys compensate Ford for its litigation costs should they choose to refile the action and that the rulings made during the original case would apply to a refiled case. Upon Ford's motion, the district court amended that order to clarify that the litigation "costs" mentioned in the dismissal order included those attorney fees incurred by Ford that could not be recouped in a subsequent action. The district court declined to calculate the total amount of those litigation costs at that time, however, proposing instead to do so if and when the Duffys refiled their complaint. The Duffys attempted to appeal that order, but this court held, in an unpublished order, that it was not appealable. *See* Order, Case No. 97-5764 (6th Cir. Sept. 23, 1997). Specifically, we noted that the district court's order fell within the scope of the general rule that plaintiffs cannot appeal an order granting a voluntary dismissal without prejudice. Furthermore, we added that the appeal would be premature in any case, since the amount of fees payable to the defendant had not yet been specified.

On January 12, 1998, the Duffys, represented by new counsel, recommenced their action against Ford in Tennessee state court. Ford subsequently removed the case, and it was reassigned to the district judge who had presided over the original case. In an order entered on June 11, 1998, the district court assessed Ford's non-overlapping litigation costs at $98,791.40 and informed the Duffys that they must pay that amount within thirty days or suffer dismissal of their

to plaintiffs who seek to dismiss actions which have matured to the point of trial.

The text of Rule 41(d), moreover, lends further support to the conclusion that the district court was not required to provide a cost estimate to the Duffys. Rule 41(d) grants a district court the authority to impose costs (including attorney fees, according to case law)[9] on a plaintiff upon the refiling of an action previously dismissed in any court, whether or not the earlier dismissal was conditioned upon the threat of such costs. This rule, not cited by the majority at all, contains an independent grant of authority to impose costs. The authority granted in Rule 41(d) is not dependent upon notice to plaintiffs; the text of the rule itself constitutes such notice. Thus, I would find that the district court retained the authority under Rule 41(d) to impose costs upon the Duffys, even in the absence of notice of its intention to do so.

IV.

While I am not without some sympathy for the position in which the Duffys find themselves, and respect the majority's effort to deal with these difficult issues, I cannot agree with all of the conclusions the majority reaches. I would reverse the dismissal of the Duffys' refiled action, vacate the district court's decision to impose a law-of-the-case rule upon refiling, and remand with directions to provide the Duffys a

---

[9] *See Esquivel v. Arau*, 913 F. Supp. 1382, 1388-92 (N.D. Cal 1996) (undertaking a thorough analysis and holding that attorney fees may always be awarded under rule 41(d)); Edward X. Clinton, Jr., *Does Rule 41(d) Authorize an Award of Attorney's Fees?*, 71 St. John's L.Rev. 81, 82 (1997) ("[m]ost courts that have addressed the issue have held that fees may be awarded"); *but see Anders v. FPA Corp.*, 164 F.R.D. 383, 388-90 (D. N.J. 1995) (holding that attorney fees may not be awarded under Rule 41(d) unless the underlying action already allows for shifting of attorney fees).

dismiss. As I noted earlier, when discussing the impropriety of the district court's belated imposition of a law-of-the-case condition on the Duffys' dismissal, I agree that Rule 41(a) generally implies a notice obligation – i.e., a district court generally may not "condition" a dismissal upon a requirement that is neither disclosed nor contemplated by the parties prior to the effective date of that dismissal. But, I cannot agree that this notice requirement commands the unwieldy procedure the majority imposes here.

A review of the transcript reveals that the Duffys *were* put on notice that their dismissal would be conditioned on the payment of costs and *were* put on notice that these "costs" would include whatever costs might be authorized under "the rules." Thus, there is no doubt that the Duffys and their counsel were aware both that costs would be imposed and that it was the Duffys who would bear the risk that those costs might entail more than they hoped. This notice is surely sufficient to meet the requirements of Rule 41(a); indeed, there is nothing in the text of Rule 41(a) or in the cases considering it that justifies imposing any greater obligation on the district court.

The majority, however, believes that the district court abused its discretion in this case because, when faced with a motion to dismiss mid-trial, it failed to suspend the proceedings, require Ford to calculate its costs and attorney fees, provide that information to the Duffys and their counsel, and give the Duffys time to contemplate their decision to abandon prosecution of their case. This exercise would have required Ford's counsel to divert its attention from trial and calculate their time and accompanying fees, and would have required the district court to make an initial assessment of the reasonableness of those charges and of the legal definition of costs under the Federal Rules, all while the jury was being asked to sit and wait, and all so the Duffys could decide what strategy best suited them at that point in time. I cannot agree that Rule 41(a) mandates such an accommodating approach

complaint. The district court also ordered that all the rulings from the original action would be the law of the case in the refiled action, except that the Duffys would be permitted to name one additional expert in the refiled action. On June 19, 1998, in response to Ford's motion for reconsideration, the district court adjusted that amount to $126,431.09, finding that the court had erred in its initial calculation. The Duffys timely appealed from those rulings. Ford subsequently moved to dismiss that appeal, arguing again that the Duffys were trying to appeal their own voluntary dismissal and that Sixth Circuit precedent does not permit such appeals. A Sixth Circuit panel denied the motion but asked the parties to address the jurisdictional issues in their appellate briefs. *See* Order, Case Nos. 98-5950/6112 (6th Cir. Nov. 3, 1998).

Facing dismissal of their refiled case due to their inability to pay the required costs, the Duffys filed a motion to stay enforcement of the district court's order of June 19, 1998, which was denied in an order dated August 3, 1998. On October 14, 1998, the district court denied the Duffys' motion for reconsideration of that August 3 order, holding that, because the Duffys had already filed a notice of appeal in the pending case, the district court was without jurisdiction to consider the motion. The Duffys then appealed the October 14 order and the corresponding judgment dismissing their refiled action.

The Duffys now argue that the district court's orders requiring them to pay Ford's attorney fees and imposing the law of the case on the refiled action caused them legal prejudice and are therefore immediately appealable under the law of the Sixth Circuit. Furthermore, they claim that the terms and conditions imposed by the district court amounted to an abuse of discretion.

## II. ANALYSIS

### A. Appealability of the District Court's Orders

Ford argues that the district court's orders granting the Duffys' voluntary-dismissal motion are not immediately appealable, because they are not adverse, involuntary judgments. The Duffys, by contrast, argue that this court has appellate jurisdiction, because the terms and conditions imposed on their voluntary dismissal by the district court caused them legal prejudice.

The general rule is that a plaintiff who requests and is granted a voluntary dismissal without prejudice under Federal Rule of Civil Procedure 41(a)(2) cannot appeal that dismissal, because it is not an involuntary adverse judgment.[1] *See Scholl v. Felmont Oil Corp.*, 327 F.2d 697, 700 (6th Cir. 1964); 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2376, at 93 (Supp. 1999). Several circuits have recognized an exception to this rule of nonappealability, however, when the plaintiff has suffered "legal prejudice" from the conditions imposed by the district court and has not acquiesced in those conditions. *See Belle-Midwest, Inc. v. Missouri Property & Cas. Ins. Guar. Ass'n*, 56 F.3d 977, 978 (8th Cir. 1995); *McGregor v. Board of Comm'rs*, 956 F.2d 1017, 1021 (11th Cir. 1992); *Unioil, Inc. v. E.F. Hutton & Co.*, 809 F.2d 548, 556 (9th Cir. 1986), *cert. denied*, 484 U.S. 822 (1987); *Yoffe v. Keller Indus., Inc.*, 580 F.2d 126, 129-30 (5th Cir. 1978), *cert. denied*, 440 U.S. 915 (1979); 9 WRIGHT & MILLER, *supra*, § 2376, at 93. The

---

[1]Rule 41 provides, in pertinent part,
  **(a) Voluntary Dismissal: Effect Thereof**
  . . .
  **(2) By Order of Court.** Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. . . .
FED. R. CIV. P. 41(a)(2).

---

of Ford's costs fully upon the Duffys. That is precisely what Rule 41(d) authorizes the district court to do, however, and precisely what this district court indicated it would do if the first action were dismissed mid-trial. There are, moreover, mechanisms for the shifting of costs between client and errant counsel (e.g., malpractice claims, contract actions, so on), which avoid placing the burden of their internecine disputes upon third parties, such as Ford or the court.[8] I would let the Duffys resort to those mechanisms for help in reviving their claims (or redirecting them altogether) and decline to find that the district court abused its discretion in doing precisely what the Federal Rules of Civil Procedure allow it to do.

### III.

I also disagree strongly with the majority's conclusion that the district court was obligated to: (1) determine the approximate amount of "costs" the Duffys might face upon refiling of their action; and (2) provide the Duffys with notice of that figure before accepting the Duffys' motion to dismiss. Not only is such an obligation inconsistent with the authority granted to district courts under the Federal Rules of Civil Procedure, it imposes a burden on trial courts which would be unworkable in practice.

The majority concludes that Rule 41(a) contains a notice requirement – that is, that a district court may not condition a voluntary dismissal without prejudice upon a requirement that is not disclosed to the party seeking dismissal before dismissal occurs. The majority then concludes that the district court violated this notice requirement by failing to: (1) calculate the approximate dollar amount of the costs the Duffys would be required to pay upon refiling; (2) inform the Duffys of that dollar figure; and (3) give the Duffys the chance to reassess the merits of their pending motion to

---

[8]Indeed, at oral argument current counsel for the Duffys indicated that the Duffys have asserted a malpractice claim against the Thomases.

There is, moreover, no apparent mechanism by which the district court could have imposed Ford's costs upon counsel rather than the Duffys. First, as noted, the text of Rule 41(d) discusses the imposition of costs upon the plaintiffs, not counsel.[6] Next, the costs were not imposed unconditionally; they were imposed as a condition to the refiling of a new action. While the Duffys necessarily would be involved in any such refiling, counsel might not be; counsel could withdraw or be replaced before the event triggering the obligation to pay costs ever occurred. Indeed, that is precisely what happened here – the Thomases were replaced and were no longer counsel of record when the refiling occurred. It would be difficult for the district court to condition the Duffys' right to refile upon the performance of an act by someone no longer involved in the litigation.

Finally, as the majority makes a point of noting, the district court neither sanctioned the Thomases, nor made findings against the Thomases evidencing a clear intention to do so.[7] While a district court surely has the discretion to impose sanctions upon counsel for a variety of behaviors, it is under no obligation to do so in the absence of a motion from the opposing party seeking such sanctions or a record which reflects a clear factual predicate for doing so.

If it truly was counsel's failures alone which caused the first trial to be aborted, it does seem unfair to impose the burden

---

[6]Indeed, in all instances in which a district court conditioned refiling of a case upon payment of costs, I could find only one where the plaintiff's counsel (as opposed to the plaintiff himself) was ordered to make payment. *See Whitehead v. Miller Brewing Co.,* 126 F.R.D. 581 (M.D. Ga. 1989). And even in *Whitehead,* the district court characterized its decision to impose payment of costs on counsel as a sanction for "willful abuse [of] judicial processes." *Id.* at 583 (citation omitted). The *Whitehead* court enforced this "sanction" by allowing counsel to withdraw from the refiled case only after payment of the costs.

[7]The district court characterized the performance of the Thomases as "inept," but did not find or suggest that their actions were sanctionable.

case law in this circuit suggests that this court would recognize a similar exception. *See Management Investors v. United Mine Workers*, 610 F.2d 384, 394-95 (6th Cir. 1979); *Scholl*, 327 F.2d at 700.

Nonetheless, the standard for obtaining review of a voluntary dismissal without prejudice is a fairly stringent one, and the plaintiffs have not met it in this case. In *Scholl*, this court suggested that the terms and conditions imposed by the district court under Rule 41(a)(2) would be appealable only if they were unreasonable. *See* 327 F.2d at 700. In *Management Investors*, we stated that an appeal from a voluntary dismissal without prejudice "does not lie to review rulings which do not have the effect of determining the case against plaintiff." 610 F.2d at 394. In that case, the district court had declined to exercise supplemental jurisdiction over the plaintiff's state law claims, and the plaintiff subsequently dismissed its federal claim voluntarily. Because the plaintiff had voluntarily dismissed the case, this court held that the plaintiff could not appeal the prior ruling dismissing the state-law claims, because that ruling did not prevent the plaintiff from bringing suit again. *See id.* at 395 ("[W]hile the dismissal of the state claims precluded their adjudication on the merits in this lawsuit, it did not preclude their adjudication in a state court."). The court also pointed out that the dismissal had no res judicata effect, even in federal court, because it was without prejudice.[2] *See id.*; *see also LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 604 (5th Cir. 1976) (describing legal prejudice as a ruling that "severely

---

[2]*Management Investors* is different from the instant case in that the ruling that assertedly caused legal prejudice to the plaintiffs in that case — the district court's dismissal of the plaintiffs' state-law claims — occurred before the plaintiffs' voluntary dismissal, rather than as a condition of that dismissal. We believe that this difference is irrelevant, however, since the goal of the legal prejudice inquiry is simply to determine whether the district court's actions amount to an involuntary adverse judgment against the plaintiff, irrespective of whether that ruling is the cause or the condition of the "voluntary" dismissal.

circumscribe[s]" a plaintiff's ability to bring another suit); *see also Boland v. Engle*, 113 F.3d 706, 714 (7th Cir. 1997); *Belle-Midwest*, 56 F.3d at 978.

The Duffys argue that the terms and conditions imposed by the district court are unreasonable and severely circumscribe their ability to bring suit again. With respect to the attorney-fees condition, the Duffys argue that they are unable to pay those fees and are therefore effectively barred from re-filing their suit. The Duffys' argument is supported by the fact that some courts have hesitated to make categorical statements about what kinds of conditions amount to legal prejudice, stating that it is the effect, rather than the formal language of the dismissal, that determines whether legal prejudice results. *See LeCompte*, 528 F.2d at 603. Ford responds by pointing out that courts have found similar fee conditions not to constitute legal prejudice: in *Unioil, Inc. v. E.F. Hutton & Co.*, 809 F.2d 548 (9th Cir. 1986), the total costs imposed on the plaintiff were $165,774.84, *see id.* at 554, and in *Yoffe v. Keller Indus., Inc.*, 580 F.2d 126 (5th Cir. 1978), more than two decades ago, the total cost was $44,523.20, *see id.* at 128. The key question, then, is whether the reasonableness standard for imposing attorney fees under Rule 41(a)(2) is a subjective or objective one —— that is, whether the unique circumstances of the individual parties are relevant to the reasonableness of the fees and to the finding of legal prejudice. Although there is no binding precedent on this issue in the Sixth Circuit, this court is extremely reluctant to announce a rule that makes its appellate jurisdiction depend upon the financial wherewithal of the parties. To do so would mean that parties without the means to pay a cost condition could immediately appeal that condition, whereas a wealthier party faced with an identical condition could not; we believe that such a result would be anomalous, and we know of no other area of appellate jurisdiction in which the means of the parties, rather than the nature of the decision, determines appealability. Furthermore, appellate courts are not well positioned to make the predicate factual determination whether a party truly cannot afford to pay costs, which would

refiling" prior to entering an order granting the Duffys' request for dismissal. (Majority opinion at 12.)

II.

As to the first of these conclusions, a review of the transcript reveals that the trial court made clear to all present during the proceedings, including the Duffys, that *plaintiffs* would be required to pay defendant's costs as a condition of any refiling of their dismissed action. Neither the district court, nor any party, nor counsel made any reference to the payment of costs by counsel, and counsel certainly made no commitment on the record that they would be willing to share the burden of those costs. Indeed, it appears that, in considering the question of "costs," the parties were referring to the language of Rule 41(d) of the Federal Rules of Civil Procedure, which expressly provides that, upon refiling of a dismissed action, "the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the *plaintiff* has complied with the order." Rule 41(d) F.R.C.P. (emphasis added).[5]   Thus, the record reveals that notice of the district court's intention to impose costs upon the Duffys themselves as a condition to refiling was provided prior to the dismissal entry.

---

[5]While no party specifically referred to Rule 41(d) on the record, it appears from the context of the discussion that the parties and the court were referring to the text of Rule 41 when discussing the motion to dismiss and the imposition of costs upon refiling. (*See* J.A. at 325-330, where the court refers to the concept of refiling "costs" under "the rules" and the Duffys' counsel discusses examining the cost question for over thirty minutes prior to making the motion to dismiss). It is also clear, moreover, that the *only* section of Rule 41 which mentions the concept of costs, particularly costs imposed upon refiling, is Rule 41(d).

When the Duffys' counsel sought dismissal mid-trial, the district court had several choices:  to deny the request, to grant it unconditionally, or to grant it upon specified conditions.  The district court chose the last of these routes; the court expressly granted the Duffys' request upon the condition that the Duffys pay defendant's costs.  Thus, when the Duffys did dismiss this action, it was with the belief that, at some financial cost, a refiled action would provide them an opportunity to cure the discovery or evidentiary mistakes made to date.  The district court did nothing to disabuse the Duffys or their counsel of the belief that, subject to the payment of costs, they would be permitted to "press the restart button" upon dismissal of their first action.  The district court's post-hoc decision to impose different conditions, after dismissal and after release of the jury, left the Duffys in the position of having to pay the defendant for the privilege of retrying the case for which their counsel was ill-prepared in the first instance.  While the district court could have presented this "choice" to the Duffys and their counsel before dismissal, a choice the Duffys likely would have rejected, it did not do so.  The district court's belated law-of-the-case ruling rendered the Duffys dismissal useless from a strategy standpoint and constituted an abuse of the court's discretion under Rule 41(a)(2).[4]

I respectfully dissent, however, from the majority's conclusion that the district court abused its discretion when it imposed Ford's attorney fees and costs upon the Duffys, rather than their counsel, as a condition of refiling.  And, I dissent from the conclusion that the district court had an obligation "to give the Duffys notice of the approximate amount of costs for which they would be responsible upon

---

[4] Again, it is important to emphasize that it would not be an abuse of discretion to impose conditions on a dismissal which are so onerous as to render dismissal undesirable, provided, however, that some notice of those conditions occurs before dismissal, or at least at a point when reinstatement upon rejection of the conditions remains feasible.  That is not what occurred here.

be required by the rule that the Duffys appear to advocate. Therefore, we conclude that an appealing party must show that a cost condition is objectively unreasonable, without regard to that party's financial means, in order to demonstrate legal prejudice.

The Duffys have not made any claim or showing that the costs imposed by the district court are objectively unreasonable: for example, they do not claim that those costs are arbitrary or disproportionate to the effort Ford has expended.  Indeed, Ford submitted detailed affidavits itemizing its expenses, which the Duffys do not contest. Rather, they argue that those fees are unreasonable because they result in the Duffys' inability to bring a second suit. We therefore hold that the district court's order with respect to costs does not result in legal prejudice to the Duffys.

The Duffys also contend that they were legally prejudiced by the district court's decision to impose on the refiled action the law of the case from the original action.  They argue that the district court's evidentiary rulings from the original action prevent the Duffys from introducing the evidence necessary to prevail in the refiled action.  As Ford points out, however, the Duffys have not pointed to any specific evidence that they need to introduce in order to prevail, nor have they explained what showings they will be unable to make with the considerable evidence they had amassed for the original trial. Furthermore, the district court's order permitted the Duffys to name one additional expert in the refiled action.

The Court of Appeals for the Seventh Circuit dealt with a situation very similar to this one in *Parker v. Freightliner Corp.*, 940 F.2d 1019 (7th Cir. 1991).  In that case, the district court had granted the plaintiff a voluntary dismissal under Rule 41(a)(2) on the condition that the court's order barring the plaintiff's use of expert testimony would remain in effect in any subsequent action.  The court of appeals determined that this condition did not amount to legal prejudice, because the plaintiff would have been able, under state law, to make

out a prima facie case without the use of expert testimony. *See id.* at 1023-24 & n.3. In the instant case, although the Duffys' counsel described Feaheny as a "critical witness," J.A. at 400 (Tr.), and stated that the exclusion of his testimony was the impetus for requesting a voluntary dismissal, the Duffys have not shown that they would be unable to make out a prima facie case with the evidence they already have or with the addition of one expert witness to replace Feaheny. Indeed, it seems particularly implausible that Feaheny could be so central to the Duffys' case, when, in fact, he admitted that he had not examined the vehicle involved in the accident and that he did not have specific knowledge about the engineering of the particular Bronco model that William Duffy was driving when he was killed. Therefore, the Duffys have not shown that the district court's imposition of the rulings from the original action on the refiled action constituted legal prejudice.

We nonetheless hold that we have jurisdiction to review the district court's dismissal of the refiled case. Although the district court's dismissal of the initial case was not an involuntary, adverse judgment, and therefore was not immediately appealable, the dismissal of the refiled case clearly was such a judgment, and the Duffys are allowed to appeal it. *See, e.g.*, *Herring v. City of Whitehall*, 804 F.2d 464, 466 & n.2 (8th Cir. 1986) (allowing an appeal from the district court's dismissal with prejudice of the plaintiffs' refiled suit when the plaintiffs failed to pay the defendants' attorney fees as required by the district court's order granting the plaintiffs' request for a voluntary dismissal). The Fifth Circuit has suggested that a plaintiff can obtain review of a conditional voluntary dismissal by accepting those conditions, but then refusing to comply with them and suffering a dismissal with prejudice as a result. *See Mortgage Guar. Ins. Corp. v. Richard Carlyon Co.*, 904 F.2d 298, 301 n.5 (5th Cir. 1990); *Yoffe*, 580 F.2d at 131 n.13. That is what the Duffys did in this case. Although the district court technically dismissed the refiled case without prejudice, that dismissal was involuntary and, as the Duffys point out in their brief,

conditions which were the predicate for that dismissal.[2] This is true, regardless of when those conditions were imposed.

In light of the conclusion that the district court's dismissal of the refiled action gave rise to an appealable order, a conclusion with which the majority agrees, I would have declined to reach the question of whether the district court's dismissal of the original action, with its stringent conditions, was otherwise appealable. The question of what constitutes "legal prejudice" in the context of Rule 41(a)(2) dismissals is a complex, fact-specific one. I do not believe it is useful to engage in a discussion which could be read to establish parameters for this legal concept when that discussion is unnecessary to the Court's determination of the appeal before it.[3]

I also agree that the district court abused its discretion in imposing a law-of-the-case rule upon the refiling of an action by the Duffys. Like the majority, I agree that such an order can be appropriate in some circumstances, and that the district court would be free to reach the same conclusions if presented with the same evidentiary questions in a new action. Also like the majority, however, I agree that the district court should not have applied an across-the-board law-of-the-case ruling as a condition precedent to refiling, in the absence of some prior notification to the parties of its intention to do so.

---

[2]The two conditions imposed in this case must be considered in tandem. While the Duffys primarily focus on their inability to pay Ford's costs as a condition of refiling, the additional law-of-the-case condition affects the value of that refiling to the Duffys and, thus, is pertinent to the nature of the burden created by the district court's imposition of costs.

[3]If pressed to address the issue, I would be inclined to find that "legal prejudice" did arise from imposition of the law-of-the-case condition on the Duffys' original dismissal; I would do so for the same reasons the majority later concludes the district court abused its discretion by insisting on compliance with that same condition.

---

**CONCURRING IN PART, DISSENTING IN PART**

---

KATHLEEN McDONALD O'MALLEY, District Judge, concurring in part and dissenting in part. Although the majority eloquently deals with a number of difficult concepts, I can only concur in part in the conclusions the majority reaches. Specifically, I concur in the result reached in Sections II.A, and in both the reasoning and conclusion contained in Section II.B.2, of the majority opinion; I respectfully dissent, however, from Section II.B.1 of the majority opinion, and would have declined to address certain matters discussed in Section II.A because they are unnecessary to a resolution of this appeal.

I.

I agree that this Court has jurisdiction to consider the issues raised in the Duffys' appeal. The district court's dismissal of the Duffys' "refiled" action was a final appealable order, vesting this Court with jurisdiction to consider the rulings upon which that dismissal was premised.[1] The Duffys' refiled action was dismissed because the Duffys would not or could not satisfy certain conditions the district court imposed on refiling. In order to assess the propriety of the dismissal, this Court can and, indeed, must assess the validity of the

---

[1] As the majority points out, while the dismissal entry stated that it was "without prejudice," the practical effect of the dismissal was to forever bar the Duffys' claims. Thus, despite the characterization, the dismissal was certainly an "involuntary adverse judgment" from which an appeal does lie.

operated as a dismissal with prejudice, because the statute of limitations had run on the Duffys' claims at that point.[3] *Cf. LeCompte*, 528 F.2d at 603 (stating that it is the effect, rather than the formal language of the dismissal, that determines whether legal prejudice results). Of course, the dicta of the Fifth Circuit in *Yoffe* and *Mortgage Guaranty* are not binding on this court, but the logic of those cases is persuasive. Therefore, we hold that this court can hear the Duffys' appeal of the dismissal of the refiled case.

**B. Permissibility of the District Court's Conditions**

The terms and conditions imposed by the district court on the dismissal of the original action resulted in the dismissal of the refiled action. For this reason, we can consider the permissibility of those terms and conditions when we review the appropriateness of the district court's second dismissal. In conducting that review, we must consider whether the district court's conditions on the Duffys' voluntary dismissal constituted an abuse of discretion. *See DWG Corp. v. Granada Invs., Inc.*, 962 F.2d 1201, 1202 (6th Cir. 1992). If they did not, then the district court was entitled to dismiss the Duffys' refiled action, even if that second dismissal operated as a dismissal with prejudice. *See Stern v. Inter-Mountain Tel. Co.*, 226 F.2d 409, 409-10 (6th Cir. 1955); 9 WRIGHT & MILLER, *supra*, § 2366, at 316-17. If those conditions were an abuse of discretion, however, then the district court's orders imposing those conditions, as well as its order

---

[3] Under Tennessee law, the plaintiff has one year to refile an action after a dismissal without prejudice. If the second action is also dismissed, however, the statute of limitations is not tolled, and the plaintiff still has only one year from the dismissal of the original action in which to file again. *See Hunt v. Shaw*, 946 S.W.2d 306, 307-08 (Tenn. Ct. App. 1996); *Payne v. Matthews*, 633 S.W.2d 494, 496 (Tenn. Ct. App. 1982). Since state statute-of-limitations rules apply to a diversity case under *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), it appears that Tennessee law would bar reinstitution of the Duffys' complaint after the second dismissal. *See generally* 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §1056, at 179-81 (2d ed. 1987).

dismissing the refiled action due to the Duffys' failure to meet those conditions, must be reversed.

## 1. Requiring the Duffys to Pay Ford's Costs

The Duffys do not contest the district court's ability to require reimbursement of Ford's attorney fees and costs, nor do they contest the amount of those fees and costs. They argue only that the district court abused its discretion in requiring the Duffys rather than their trial counsel to pay. The Duffys contend that their former counsel, the Thomases, should have to pay Ford's costs because the Thomases' incompetence necessitated the voluntary dismissal. We hold that it was an abuse of discretion for the court not to consider the Duffys' responsibility for Ford's wasted costs in assessing costs against the Duffys rather than their counsel. Furthermore, we hold that the district court abused its discretion in failing prior to the entry of the January 24, 1997, dismissal order to give the Duffys notice of the approximate amount of costs for which they would be responsible upon refiling and to afford them an opportunity to withdraw their motion. Therefore, we vacate the district court's order of dismissal and its order requiring the Duffys to pay Ford's costs before refiling, and we remand for reconsideration in light of this holding.

In *Herring v. City of Whitehall*, 804 F.2d 464 (8th Cir. 1986), the Court of Appeals for the Eighth Circuit held that it was an abuse of discretion for the district court to require the plaintiffs to pay attorney fees before they could refile their case without considering whether they were responsible for the defendants' wasted costs. In that case, the district court had granted the plaintiffs' motion for a voluntary dismissal due to their counsel's unpreparedness, on the condition that the plaintiffs' counsel pay the defendants' fees and costs if the plaintiffs refiled, but if the plaintiffs retained new counsel — which they did — the plaintiffs would be responsible for the costs. *See id.* at 466. While noting that there may be some due process concerns associated with assessing costs directly

position to determine initially whether there is a basis for reconsidering its evidentiary rulings, whether the Duffys are still capable of prevailing in light of those rulings, and whether retaining the law of the case in the refiled action is necessary for the protection of Ford's interests.

We therefore find it necessary to vacate the district court's order applying the law of the original case to the refiled case and direct the district court on remand to reconsider its decision in light of any objections that the Duffys may wish to make. We note, however, that if the district court's rulings from the original action no longer apply in the refiled action, Ford may be entitled to reimbursement for any additional costs and fees that it will have to expend in the refiled litigation as a result of having to relitigate those rulings, consistent with our discussion in Part II.B.1.

## III. CONCLUSION

For the foregoing reasons, we **VACATE** the district court's August 3, 1998, dismissal order and its orders of June 11, 1998, and June 19, 1998, requiring the Duffys to pay Ford's costs and imposing the law of the case on the refiled action, and we **REMAND** the case for further proceedings consistent with this opinion.

meant that the Duffys did not have a sufficient opportunity to contest the district court's decision or to withdraw their motion for voluntary dismissal if they did not wish to accept that condition.[8] As we stated with respect to the cost condition, we hold that the district court should have given the Duffys notice and an opportunity to withdraw their motion before imposing the law-of-the-case condition. *See Marlow*, 19 F.3d at 305; *Lau*, 792 F.2d at 930; *GAF Corp.*, 665 F.2d at 368.

We also note that the district court did not explain its reasons for deciding to apply its rulings from the original action to the refiled action. For this reason, it is particularly difficult to determine whether the district court appropriately exercised its discretion in attaching this condition to the Duffys' voluntary dismissal. *See, e.g.*, *DWG Corp.*, 962 F.2d at 1202 (citing *Taragan v. Eli Lilly & Co.*, 838 F.2d 1337, 1339 (D.C. Cir. 1988)); *LeCompte*, 528 F.2d at 605. Ford contends that no additional discovery is necessary for the Duffys to prevail and that there is no legal or factual reason why the district court would be inclined to rule differently on the evidentiary issues if the Duffys were given an opportunity to re-visit them. At the same time, the Duffys contend that the district court's condition prevents them from prevailing in their suit and is not necessary for the protection of the defendant. We believe that the district court is in the better

---

IT IS FURTHER ORDERED that plaintiffs may add one expert to their witness list. Plaintiffs must make any such election within 14 days of the date of this order and notify defendant promptly. Defendant may take expert's deposition.
J.A. at 133-34 (Order 6/11/98).

[8]On August 17, 1998, the Duffys filed a motion for reconsideration of the district court's orders assessing costs and fees and establishing the law of the case and its order dismissing the case without prejudice. However, because the Duffys had already filed a notice of appeal, the district court found that it was without jurisdiction to consider those motions.

against the attorney rather than the client, *see id.*, and acknowledging that clients are generally held responsible for the acts of their attorneys, who are their "freely selected agent[s]," *id.* at 467 (quoting *Link v. Wabash R.R.*, 370 U.S. 626, 633-34 (1962)), the court of appeals nonetheless found an abuse of discretion. The court noted that if the attorney was to blame for the neglectful prosecution of the lawsuit, the attorney should bear the sanctions. *See id.* The court therefore ordered the district court to consider on remand the relative culpability of the attorney and the plaintiffs when determining how the defendants' costs should be allocated. *See id.* at 468 & n.7.[4]

We find it useful to analogize the instant case to those cases dealing with Rule 41(b) involuntary dismissals. The district court's actions in the instant case, as in the case of an involuntary dismissal with prejudice, have brought about the severe result of depriving the plaintiffs of a day in court to resolve their claims on the merits. *See Coleman v. American Red Cross*, 23 F.3d 1091, 1095 (6th Cir. 1994). Therefore, while recognizing that the Duffys freely chose their counsel and are consequently responsible for most of the decisions made by that counsel, we nonetheless believe that in this particular case, where the Duffys were not necessarily even

---

[4]The *Herring* court further stated that "[w]hen imposing conditions for a Rule 41 nonsuit, the district court must inquire into the moving party's ability to perform the conditions, particularly when the party alleges he cannot satisfy the conditions. In some circumstances, failure to do so may be an abuse of discretion." *Id.* at 468. As a result, the court ordered the district court on remand to take into account the plaintiffs' ability to pay the defendant's costs and to consider alternative measures if the plaintiffs are found to be culpable but unable to pay. *See id.* at 468 n.7. We do not agree that the Duffys' ability to pay Ford's costs should play a role in the district court's determination of whether the Duffys or the Thomases are at fault. However, because the responsible party may ultimately be unable to pay Ford's costs, we note that the district court should consider the possibility of alternative solutions that would meet the goals of both protecting Ford and ensuring that the Duffys, if they are blameless, are not deprived of their day in court.

aware of the choices faced by their counsel and were given insufficient notice of the possible consequences of those choices, the Thomases rather than their clients should be required to pay if the Thomases are to blame for Ford's wasted costs. *See id.*

There is evidence in this case that the Duffys' counsel were primarily to blame for the necessity of requesting a voluntary dismissal, and, as discussed above, the Duffys claim that the dismissal of the first action was equivalent to a dismissal with prejudice, because they are unable to pay Ford's costs. The concern at the heart of *Herring* and *Coleman* — that innocent plaintiffs should not be forced lightly to bear the costs created by their incompetent counsel, especially not if the cost ultimately they bear is losing their day in court — is therefore applicable to the Duffys' case. However, we reject the Duffys' appellate counsel's suggestion, at oral argument, that the district court has made a specific "finding" that the Duffys' trial counsel were incompetent. Although the district court did mention the Thomases' ineptness in one of its orders, due process appears to require that the Thomases have notice and an opportunity to be heard before the district court could require them to pay Ford's fees. *See, e.g., Herring*, 804 F.2d at 468.[5]

---

[5] We are not persuaded by Ford's argument that the district court is without authority to require the Thomases to pay Ford's attorney fees under Rule 41(a)(2). *See Heckethorn v. Sunan Corp.*, 992 F.2d 240, 242 (9th Cir. 1993). Relying primarily on *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975), the Court of Appeals for the Ninth Circuit stated in *Heckethorn* that the federal courts cannot "alter the uniform system of cost-bearing created by Congress." *Heckethorn*, 992 F.2d at 242 (quoting *Zambrano v. City of Tustin*, 885 F.2d 1473, 1481 (9th Cir. 1989)). However, we reject *Heckethorn*'s reading of *Alyeska*. *Alyeska* says nothing about the allocation of costs as between attorneys and clients, but rather merely holds that the courts cannot provide for the payment of attorney fees without statutory authority, with certain narrow exceptions. *See Alyeska*, 421 U.S. at 269. Furthermore, the Supreme Court has stated that a court's authority over attorneys, including its authority to impose attorney fees on them, "is at least as great as its

Under appropriate circumstances, we believe that it would not be an abuse of discretion for the district court to grant a voluntary dismissal on the condition that all rulings from the original action carry over to the refiled action. District courts have broad discretion to attach conditions to voluntary dismissals under Rule 41(a)(2). *See id.* Furthermore, several courts of appeals have upheld conditions on voluntary dismissals similar to the one at issue here. *See, e.g., Parker*, 940 F.2d at 1025 (upholding the district court's order that expert testimony excluded in the original action could not be reintroduced in the refiled action); *Templeton v. Nedlloyd Lines*, 901 F.2d 1273, 1276 (5th Cir. 1990) (noting with approval the district court's decision to condition a voluntary dismissal on the plaintiffs agreeing that they would not oppose the use of existing discovery in a subsequent suit). Thus, if necessary for the protection of Ford's legitimate interests, *see, e.g., LeCompte*, 528 F.2d at 603-05; 9 WRIGHT & MILLER, *supra*, § 2366, at 304, the district court could validly impose the evidentiary rulings from the Duffys' original action on their refiled action.

We are again troubled, however, by the district court's failure to give notice to the Duffys that it intended to condition the voluntary dismissal on retaining the law of the case in the refiled action. The record reveals no discussion of that condition on January 15, 1997, when the Duffys requested and the district court orally granted a voluntary dismissal. The first mention of the law-of-the-case condition appeared in the district court's written order granting the voluntary dismissal, on January 24, 1997. In addition, the court did not specify the matters to be governed by the law of the case until an order entered on June 11, 1998, after the Duffys attempted to refile their suit.[7] This lack of notice

---

[7] On that date, in an order responding in part to the defendants' motion to determine the items to be governed by the law of the case, the district court stated:

IT IS FURTHER ORDERED that the rulings made in the 94-2124 action shall be the law of the case in the 98-2103 action.

AND PROCEDURE § 2375, at 415-16 (2d ed. 1995). Indeed, Rule 41(d) is "intended to serve as a deterrent to forum shopping and vexatious litigation," of which there was no evidence in this case. *Esquivel v. Arau*, 913 F. Supp. 1382, 1386 (C.D. Cal. 1996) (quoting *Simeone v. First Bank Nat'l Ass'n*, 971 F.2d 103, 108 (8th Cir. 1992)). In any event, a district court's application of Rule 41(d), like its imposition of terms and conditions pursuant to Rule 41(a)(2), is still subject to review by the appellate court for abuse of discretion. *See* 8 DANIEL R. COQUILLETTE ET AL., MOORE'S FEDERAL PRACTICE § 41.70[7] (3d ed. 1997). We therefore believe that our decision is in harmony with the understanding of Rule 41(d) expressed in those cases.

### 2. Imposing All Rulings from the Original Action on the Refiled Action

The Duffys also argue that it was an abuse of discretion for the district court to impose on the refiled action the law of the case from the original action. They claim that this ruling rendered them unable to prevail in the refiled case, since the ineptness of the Duffys' original counsel had left significant gaps in their proof.[6] Furthermore, they point out that the district court's ruling undermines the policy behind Rule 41, which is to leave the parties as if the suit had never been brought. *See National R.R. Passenger Corp. v. International Ass'n of Machinists*, 915 F.2d 43, 48 (1st Cir. 1990). Ford, in response, points out that Rule 41 is also intended to protect the defendant from unfairness; in addition, Ford disputes the Duffys' contention that the district court's rulings left them unable to prevail in their case. Therefore, Ford urges that the district court's ruling did not constitute an abuse of discretion.

---

[6]At oral argument, counsel for the Duffys stated that the Duffys do not contest the district court's decision to grant summary judgment on several of their claims before trial; therefore, we consider only the appropriateness of the district court's decision to apply to the refiled action all rulings from the original action regarding discovery and the admissibility of evidence.

We also hold that it was an abuse of discretion for the district court to wait until June of 1998 to determine the costs for which the Duffys would be responsible. At the time that the Duffys moved voluntarily to dismiss the action, they should have been informed of the specific conditions that would be placed on their dismissal and given the opportunity to withdraw the motion if they found those conditions to be too onerous. *See Marlow v. Winston & Strawn*, 19 F.3d 300, 305 (7th Cir. 1994) ("A court should not label something as a term and condition yet not afford the affected party an opportunity to consider his options before making his decision."); *Lau v. Glendora Unified Sch. Dist.*, 792 F.2d 929, 930 (9th Cir. 1986); *cf. GAF Corp. v. Transamerica Ins. Co.*, 665 F.2d 364, 368 (D.C. Cir. 1981); *Scholl*, 327 F.2d at 700 ("There was no requirement that the appellant agree to the entry of this order. It was an alternative available to appellant in lieu of proceeding with the trial."). Particularly given the size of Ford's costs, there appears to be a significant likelihood that the Duffys would have withdrawn their motion for voluntary dismissal, had they been given the relevant information and an opportunity to do so. When faced with the Duffys' request for a voluntary dismissal under Rule 41(a)(2) and Ford's request for costs, the district court should have taken steps to determine the approximate costs for which the plaintiffs would be responsible before granting the motion and dismissing the jury. The Duffys then would have been forced to decide whether to accept the conditions and dismiss the case or to withdraw the motion.

We therefore vacate the district court's orders dismissing the refiled action and requiring the Duffys to pay Ford's fees, and we remand for the district court to reconsider its rulings. On remand, the district court is directed to assess and apportion the obligation to pay Ford's costs between the Duffys and the Thomases according to their respective fault

---

authority over litigants." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980).

in the first trial.  Although the district court's failure to give the Duffys proper notice was an abuse of discretion, we find that it was reasonable to condition the voluntary dismissal upon the payment of Ford's costs.  We therefore hold that the obligation to pay Ford's costs has not been extinguished.  However, if the Duffys are themselves to blame but are unable to pay all or some of the costs allocated to them, the district court may decide, in its discretion, whether and on what terms the case should go forward.  Should the Thomases fail to pay their share of Ford's costs, the Duffys will be allowed to proceed with their suit notwithstanding the Thomases' default.

We believe that this result is required by our holding that the district court should have given notice to the Duffys before imposing conditions on their dismissal that they were unable to fulfill.  Admittedly, this result would entail some unfairness to Ford.  However, faced with the case as it now stands, it seems inevitable that an innocent party will have to suffer, and we believe that it would be worse for the Duffys to lose their day in court, without notice, than for Ford to be required to bear its costs in this litigation.  Furthermore, although our holding is limited to the unique circumstances of this case, district courts will be able to avoid the danger of such unfair outcomes in the future by requiring defendants to approximate their costs before granting a voluntary dismissal.  Should the district court neglect its responsibility, the defendant — the party with the easiest access to the relevant cost information — will have an incentive to encourage the court to fulfill it.  Indeed, in the instant case, Ford could have tried to protect itself by requesting that the district court clarify its terms and conditions when that court orally announced its intention to grant the Duffys' voluntary dismissal motion.

Finally, we note our disagreement with the dissent's assertion that FED. R. CIV. P. 41(d) demonstrates that the district court's imposition of Ford's costs and attorney fees on the Duffys was permissible.  As a preliminary matter, we do

not believe that Rule 41(d), which allows district courts faced with the refiling of a previously dismissed action to "make such order for the payment of costs of the action previously dismissed as it may deem proper" and to "stay the proceedings in the action until the plaintiff has complied with the order," is directly applicable here.  FED. R. CIV. P. 41(d).  When the Duffys attempted, based on the language of Rule 41(d), to persuade the district court merely to stay the refiled case instead of dismissing it, the district court explicitly stated that it had imposed the payment condition pursuant to Rule 41(a)(2), not Rule 41(d).  *See* J.A. at 427-29 (Order Den. Pl.'s Mot. for Stay & Order Dismissing Compl. Without Prejudice).

Moreover, we do not believe that our holding is inconsistent with Rule 41(d).  First, although, as the dissent correctly points out, most courts that have considered the question have concluded that attorney fees may be awarded under Rule 41(d), the matter is far from settled in this circuit or in most others.  *See, e.g.*, Edward X. Clinton, *Does Rule 41(d) Authorize an Award of Attorney's Fees?*, 71 ST. JOHN'S L. REV. 81, 82 & nn.5-6 (1997) (noting that the federal courts are split on the issue of whether attorney fees may be awarded under Rule 41(d) and citing cases on both sides).  Rule 41(d) therefore does not constitute clear authority for the district court's actions.  In addition, a number of courts have expressed reluctance to exercise their discretion to award costs under Rule 41(d) when the result would be to deprive innocent plaintiffs of their day in court due to their inability to pay the defendant's costs.  *See Gregory v. Dimock*, 286 F.2d 717, 718 (2d Cir. 1961); *Zucker v. Katz*, 708 F. Supp. 525, 539 (S.D.N.Y. 1989); *Phoenix Canada Oil Co. v. Texaco, Inc.*, 78 F.R.D. 445, 448-49 (D. Del. 1978); *see also Loubier v. Modern Acoustics, Inc.*, 178 F.R.D. 17, 22-23 (D. Conn. 1998) (noting that, although no showing of bad faith is required before costs may be imposed on the plaintiff under Rule 41(d), the plaintiff's motive in dismissing the prior action may be taken into account); *see generally* 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE