William J. STARK, Plaintiff,

v.

ARMSTRONG WORLD INDUSTRIES, INC.; Westinghouse Electric Corp.; General Electric Co., Combustion Engineering; Foster Wheeler Co., Bethlehem Steel Corp., Defendants,

Alaska Steamship Company, et al.; American President Lines, Ltd., on its own behalf and as successor in interest to American Mail Lines; Matson Navigation Company, Inc., Defendants–Appellants,

The Anchor Packing Company; General Electric Company; Todd Shipyards, Inc.; Alfred Conhagen, Inc., et al.; Indian Head; Felt Products Manufacturing Company; Fel–Pro, Inc.; Bryan Steam, et al.; Maron Group Rockbestos Company, nka Rockbestos–Suprenant Cabel Corporation; Pittsburgh Corning Corporation; Durabla Manufacturing Company, et al.; Champion International Corporation, et al.; Crosby Valve, Inc.; Coffin–Turbin Pump, Defendants–Appellees.

No. 00–3444.

United States Court of Appeals, Sixth Circuit.

Oct. 3, 2001.

Before BOGGS and DAUGHTREY, Circuit Judges; and WEBER, District Judge.*

* The Honorable Herman J. Weber, United States District Judge for Southern District of Ohio, sitting by designation.

PER CURIAM.

During extended litigation, seaman Stark settled with his former employers (those potentially liable under the Jones Act, 46 U.S.C. § 688) and voluntarily dismissed a large number of codefendant marine component manufacturers. This dismissal was "without prejudice," and allowed a sixty-day window for the remaining defendants to join any dismissed parties. After the case was transferred from the Eastern District of Pennsylvania to the Northern District of Ohio, the transferee court converted the dismissal into one "with prejudice" after the employers failed to implead any of the dismissed codefendants. The employers now claim the dismissal with prejudice was error, and that it harmed them by cutting off their rights of action against certain manufacturers. We affirm.

### I

William J. Stark, a career merchant mariner, filed two lawsuits against various defendants seeking compensation for his asbestos-related injuries. In June 1994, he filed a federal action that was incorporated into the Maritime Asbestos Docket of Northern District of Ohio. In that action, Stark made claims against 113 different defendants, comprised of shipowners who had been his former employers, and numerous manufacturers of maritime equipment. The shipowners responded to this suit by sending forms to the district court that adopted a standard answer on file with the court. This answer included assertion of cross-claims against manufacturers. Stark's case moved through the federal court system for some time, with stops at the Judicial Panel on Multi–District Litigation and the United States District Court for the Eastern District of Pennsylvania.

Meanwhile, Stark had filed a second suit in Louisiana state court, although this complaint named only 14 defendants. Stark's Louisiana action eventually also made its way to the Eastern District of Pennsylvania, where it was it consolidated with Stark's earlier case, under the supervision of Judge Weiner. Stark voluntarily sought dismissal of all those defendants in his Ohio complaint who had not also been named in his Louisiana complaint. Judge Weiner granted Stark's motion in April 1998, indicating that "[p]laintiff's request to dismiss all of the defendants not named ... IS GRANTED without prejudice. Defendants shall have sixty (60) days to rejoin any third-party defendants to the action." After consolidation and the issuance of this order, the case was sent back to the Northern District of Ohio.

The defendants-appellants did not seek joinder of other parties; they claim this was a "strategic decision." (Shipowner Br. at 6). As a consequence, the Northern District of Ohio issued an order in March 1999 that due to "[s]ixty (60) days having passed, the Court hereby dismisses all defendants ... not named ... with prejudice." Defendant shipowners sought reconsideration of this order in September 1999, claiming that eventual dismissal *with* prejudice had not been contemplated by Judge Weiner's April 1998 order, and that it had adversely affected their right to bring a later action against former codefendants. Reconsideration was denied by marginal order, and the defendants now appeal this denial, and seek vacatur or reformation of the March 1999 order. The shipowner defendants have settled with Stark, and apparently believe the language of the order may hamper potential future claims for indemnity and contribution against the dismissed defendants.

### II

*Standard of Review*

■ We do not appear to have addressed previously the type of review ac-

corded to decisions precisely like the one considered here, involving a district court's interpretation of another court's order of dismissal with attached conditions. However, we may safely assume that abuse of discretion is the proper standard. Recently, we have had occasion to review whether the conditions attached to an order of voluntary dismissal were reasonable. *Duffy v. Ford Motor Co.*, 218 F.3d 623, 629 (6th Cir.2000). *Duffy* held that "we must consider whether the district court's conditions on [plaintiffs'] voluntary dismissal constituted an abuse of discretion." *Ibid.* This is analogous to the current inquiry into whether the *interpretation* of conditions attached to a voluntary order of dismissal was reasonable, and we may therefore reverse and remand only if the district court abused its discretion.

### Justiciability of Shipowners' Claim

The dismissed defendants assert, on several grounds, that the shipowners' appeal is not properly before the court. Summarizing the appellees' view, they argue that the shipowners are seeking an advisory opinion regarding any preclusive effect (or more hopefully, lack thereof) that the district court's order might have on contribution or indemnity claims the shipowners might bring in the future. The appellees claim that the appeal of the shipowners is non-justiciable, because this controversy is purely hypothetical. (Dismissed Def. Br. at 10–11). Although the dismissed defendants assert that we should not consider the appeal, they argue in the alternative that any preclusive effect of the court's order dismissing with prejudice would be proper.

The shipowners respond that they have already suffered injury, because by means

of the district court's order, their "right to bring a separate action for contribution was abrogated ... before their contribution claims had even accrued." (Shipowner Reply Br. at 2). This accrual argument, however, means neither that they were *unable* to assert their cross-claims, nor that they lacked notice of them, when Judge Weiner remanded the case back to Ohio. Under the terms of the complained-of order, these cross-claims could have been included in the action, assuming that the other parties' liability to the shipowners or the plaintiff arose out of the same transactions or occurrences asserted by the plaintiff. *See* Fed.R.Civ.P. 14(c) (the maritime impleader rule). The shipowners claim that they never took up the offer of impleader because the defendants were dismissed by Judge Weiner without prejudice; they only became worried when the dismissal occurred with prejudice.

The March 1999 order, on its face, dismisses with prejudice any defendants not named in Stark's Louisiana complaint. Stark, who initiated the dismissal, certainly could have grounds to complain about the dismissal with prejudice, because it clearly has the effect of precluding him from again asserting the asbestos claims he once brought against the dismissed manufacturers. However, Stark did not protest. It is less clear that the shipowners, whose third party claims against the dismissed defendants are *not mentioned by the order*, currently have such standing.[1]

■ As a matter of maritime practice, if one is attempting to use an order of voluntary dismissal to move a case forward, it seems prudent to indicate authoritatively that no liability can attach between the

---

1. We are mindful of the possibility that the shipowners would be happy if their standing arguments *were* flawed, and that an expres-

sion to that effect is precisely what the appellants seek to extract from this court by means of their appeal.

dismissed defendants and the plaintiff. This prevents the remaining defendants from impleading the dismissed parties, despite the plaintiff's wishes, and compelling the plaintiff to litigate against them under Fed.R.Civ.P. 14(c). As long as the defendants were dismissed *without* prejudice, this may well have been a possibility, one that would have once again brought in potentially dozens of defendants, in essence setting the dismissal order at naught. At a minimum then, we may interpret the dismissal *with* prejudice as forestalling this kind of third-party practice in the case, once the 60 days had expired. To the extent that the March 1999 order had this effect, the district court did not abuse its discretion in issuing the order

■ The elimination of appellees' liability to Stark is not what troubles the shipowners, however. They are concerned about the loss through preclusion of the right to bring *their own* actions, not Mr. Stark's. It is an interesting question to what extent their rights were affected beyond a bar to use of Rule 14(c), and the shipowner defendants are clearly uneasy about the answer. The shipowners *may* have standing, because they *may* have indeed suffered an injury. Nonetheless, we are without jurisdiction under Article III to further construe the effect of the March 1999 order until the dispute between the shipowners and the dismissed defendants becomes ripe.

■ For the shipowners to have standing, they must demonstrate the existence of a "case or controversy." For a case or controversy to exist, a party must have suffered an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d

351 (1992) (citations and internal quotation marks omitted). Neither group of parties has discussed or briefed their views on the applicability of the general principle that a "dismissal with prejudice of the main action does not bar the defendant in that action from later bringing another suit on a matter that had been raised as a claim against a third-party defendant in the original action." CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 9 FEDERAL PRACTICE & PROCEDURE, § 2373 at 398 (2d ed.1995). In another voluntary dismissal case in which defendants objected to dismissal with prejudice, a Maryland court allowed the dismissal because a dismissal without prejudice would have compelled the plaintiff to remain a party against its wishes. *See FDIC v. Becker,* 166 F.R.D. 14, 16 (D.Md. 1996) (noting that a key purpose of the plaintiff's "settlement agreement with Defendants ... was to avoid the expenses and inconvenience of litigation"). The *Becker* court rejected the defendants' claims of injury because "a dismissal with prejudice with deprive them of no rights. They may always bring another suit on the matter raised in their Third Party Complaint...." *Ibid.* (citing the above section of Wright & Miller). Although this principle may well be distinguishable from the case *sub judice,* it is at least unclear whether the appellants have suffered any injury to the rights they wish to protect.

■ We decline to consider whether the shipowners have shown an invasion of a legally protected interest, because even were we to hold that one had occurred, a case is not properly justiciable unless it "is currently fit for judicial review." *National Rifle Ass'n of America v. Magaw,* 132 F.3d 272, 280 (6th Cir.1997). Under the doctrine of ripeness, along with identifying a case or controversy, the court must "ex-

ercise its discretion to determine if judicial resolution would be desirable under all of the circumstances." *Brown v. Ferro Corp.*, 763 F.2d 798, 801 (6th Cir.1985). These circumstances include the hardship to the parties of withholding consideration, the extent to which the harm is genuine or conjectural, and whether the record is sufficiently developed " 'to produce a fair adjudication of the merits of the parties' respective claims.' " *Sam & Ali, Inc. v. Ohio Dept. of Liquor Control*, 158 F.3d 397, 399–400 (6th Cir.1998) (quoting *Magaw* )

■ Generally, where an opinion is sought merely to assist a party in some possible future litigation, justiciability principles argue against assuming jurisdiction. *See Grimm v. Shroyer*, 35 F.Supp.2d 966, 972 n. 8 (E.D.Ky.1999). The dispute over the March 1999 order that currently exercises the parties is not ripe for review. The bar against the appellants' indemnity claims is hypothetical only, and actual harm would occur only if these claims were in fact asserted and were meritorious, issues that have also never been assessed. "All of this speculation serves to highlight the fact that it is still unclear how these events will play out," indicating we should decline jurisdiction. *Brown*, 763 F.2d at 802.

Nor is the record in this case currently structured for a fair adjudication of the respective claims of the parties. Indeed, the posture of this case at the moment has forced the parties to argue positions diametrically opposite from those one would expect. In order to prove they have suffered an injury, the appellants are adamant that "the district court extinguished Shipowners' right to pursue contribution or indemnity in an independent action," (Shipowner Br. at 16), although tellingly, they cite no legal authority for this proposition. On the other hand, the appellees are careful to never make this claim outside their alternative argument that it was within the court's discretion to extinguish the shipowners' claims as a sanction.[2] (Dismissed Defs. Br. at 13). Ultimately, however, should the shipowners actually assert indemnity or contribution claims, the preclusive effect of the March 1999 order will be an affirmative defense, for which the defendants in such hypothetical litigation (appellees here) can properly argue; also at that time, the shipowners can properly argue against it. The assumption and sharpening of proper adversarial positions in a more concrete action will afford the judicial system a better opportunity to adjudicate the parties' claims fairly.

### III

For the foregoing reasons, we AFFIRM the order of the district court. We find non-justiciable any injury to the appellants' right of independent action against the dismissed defendants.

---

2. Our disposition of this case does not require us to assess the parties' extensive dispute over    this point.